# KNEELAND v. AMERICAN LOAN AND TRUST COMPANY.

# KNEELAND v. BALLOU.

APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

Nos. 252, 1537.   Argued April 3, 7, 1890. — Decided May 19, 1890.

A party bidding at a foreclosure sale of a railroad makes himself thereby a party to the proceedings, and subject to the jurisdiction of the court for all orders necessary to compel the perfecting of his purchase; and with a right to be heard on all questions thereafter arising, affecting his bid, which are not foreclosed by the terms of the decree of sale, or are expressly reserved to him by such decree.

Where not concluded by the terms of a decree of foreclosure of a railroad, any subsequent rulings which determine in what securities, of diverse value, the purchaser's bid shall be made good, are matters affecting his interests, and in which he has a right to be heard in the trial court, and by appeal in the appellate court.

The appointment of a receiver of a railroad vests in the court no absolute control of the property, and no general authority to displace vested contract liens, and when a court makes such an appointment it has no right to make the receivership conditional on the payment of any unsecured claims except the few which by the rulings of this court have been declared to have an equitable priority; it being the exception and not the rule that the contract priority of liens can be displaced.

A court which appoints a receiver acquires, by virtue of that appointment, certain rights and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are necessarily burdens on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership.

When a court appoints a receiver of railroad property it may, in the administration, contract debts necessary for operating the road, or for labor, supplies or rentals, and make them a prior lien on the property.

When, at the instance of a general creditor, a receiver of a railroad and its rolling stock is appointed, and among the latter there is rolling stock leased to the company with a right of purchase, and, there being a deficit in the running of the road by the receiver, the rental is not paid, and the lessor takes possession of his rolling stock, his claim for rent is not entitled to priority over mortgage creditors on the foreclosure and sale of the road under the mortgage.

When the holder of a first lien upon the realty alone of a railroad company .

asks a court of chancery to take possession not only of the realty but also of personal property used for the benefit of the realty, that personalty thus taken possession of and operated for the benefit of the realty should be first paid in preference to the claim secured by the realty.

Where, on the application of the trustee of a railroad mortgage, a receiver is appointed and takes possession of the road and of its rolling stock, and among the latter is rolling stock which the company was operating under lease, and the receiver continues to operate it, its rental at the contract price, (and not according to its actual use,) if not paid from earnings will be a charge upon the proceeds of the sale under the foreclosure of the mortgage prior to the mortgage debt.

IN EQUITY. The case is stated in the opinion.

*Mr. John M. Butler* for appellant.

*Mr. James L. High*, for Paul, trustee, and the United States Rolling Stock Company, appellees.

*Mr. Bluford Wilson* for R. S. Grant, The American Loan and Trust Company, and the Grant Locomotive Works, appellees.

*Mr. Henry D. Hyde* (with whom was *Mr. Samuel Williston* on the brief) for the American Loan and Trust Company and E. B. Phillips, trustee, appellees.

*Mr. Robert G. Ingersoll* (with whom was *Mr. Clarence Brown* on the brief) for appellant.

MR. JUSTICE BREWER delivered the opinion of the court.

These cases were argued and are considered together, the questions involved being similar, and growing out of the same foreclosure suits. In a general way it may be stated that they arise between a purchaser at foreclosure sales of certain railroad property and intervening creditors. The initial question is as to the right of appellant, the purchaser, to his appeal. It is urged that a purchaser at a sale under a decree has no right to appeal from its terms. He takes under it. His purchase is a voluntary act, and, coming in voluntarily to take under a decree, he may not challenge that under which he takes. The contention of appellant is that his attitude is not thus limited; that his appeal is not from the decree of sale

under which he purchased, but from orders made thereafter respecting his bid, the modes of payment thereof, and the debts to which it should be applied, matters in which he was interested, and in respect to which, by the terms of the decree of sale, he was given a right of appeal; and that such right springs not alone from the grant of the right of appeal, but also from his relations to the matters determined and adjudged in these subsequent proceedings, and by the final decree. For a correct solution of this question a statement more in detail of the facts is essential.

Decrees of foreclosure, for there were separate divisions, the Toledo and the Saint Louis divisions, separate suits and several mortgages, were entered on the 12th day of November, 1885. It is sufficient, however, to notice the proceedings in one, for there was no substantial difference between the cases. It contained these provisions: "The complainants herein and the purchaser or purchasers at the foreclosure sale under this decree reserve the right to appeal from any orders and final decrees made by the court, directing and decreeing the payment of claims and debts found and determined and adjudged and decreed to be due and payable as court and receiver's indebtedness, and to be prior and superior in equity to the lien of said first deed of trust and mortgage herein and hereby foreclosed, if they shall be so advised." "In making payment of any surplus of said purchase-money left, after full payment of the court and receiver's indebtedness, the purchaser or purchasers shall be allowed to pay said surplus in the bonds and coupons to which the same may be applicable, as hereinabove provided, each such coupon and bond being received by the master for such sum as the holder thereof is entitled to receive under the distribution herein provided and according to the priorities herein adjudged." So that by the decree the bidders at the sale were notified in advance of their right to be heard, both in the trial and appellate courts, upon the question of what amounts should be paid to intervening creditors and what in the bonds secured by the mortgages. Common experience is that intervening claims have to be paid in cash, while the mortgage bonds of a defaulting and insolvent

corporation are generally purchasable much below par. In this case the enormous disproportion between the amount of outstanding bonds and the value of the property suggests that those bonds must have been purchasable at a very low price; and, therefore, that the question of the amount of intervening claims finally to be charged upon the property was a matter affecting materially the interests of the purchaser, and the right to be heard upon it, one which would largely determine the amount of his bid.

Further, on February 23, 1886, when the master had reported upon the intervening claims, the appellant, among others, filed exceptions to that report, in the following words: "Come now James M. Quigley, Charles T. Harbeck, John McNab, Halsey J. Boardman and Warren D. Hobb, complainants in said causes, and committees representing bondholders holding bonds secured by mortgages on said railroad and property in said causes involved, and the Central Trust Company, trustee in the mortgages in said causes foreclosed, and Sylvester H. Kneeland, purchaser of said railroad and property sold at foreclosure sale under decrees rendered and entered in said above-entitled causes, and owner of and trustee for a vast majority of said mortgage bonds, and now except to each and every of the master's findings and report herein; and said complainants, and said purchaser, for their exceptions, assign the following causes." And in the final decree thereon the exception and allowance of appeal are stated as follows: "To this decree the said Sylvester H. Kneeland, as purchaser and trustee representing the first mortgage bondholders on said entire line of railroad, concerning both divisions from Toledo, Ohio, to East Saint Louis, Illinois, now excepts and prays an appeal to the Supreme Court of the United States, which is granted to operate as a supersedeas, on giving bond in the sum of two hundred thousand dollars, which is now filed with the American Surety Company of New York as surety, and the same is approved by the court, the court, however, reserving the right to resume possession of the property on the terms mentioned in the order confirming the sale and approving the deed."

It appears also that in the early part of these foreclosure proceedings a committee consisting of James M. Quigley and others, was appointed to represent the bondholders, with authority to employ agents, etc. This committee, by leave of the court, was made co-complainant. It is stated by counsel (though that fact does not appear in the record) that a contract between this committee and Mr. Kneeland, with reference to a purchase in the interest and for the benefit of the bondholders, was presented to the court at the time of signing the decree of sale; and that it was upon that that the provision reserving an appeal to the purchaser was inserted. While no such agreement is found in the record, and therefore cannot be a subject of consideration, yet obviously the language in the decree of foreclosure, as well as that of confirmation, suggests that something of the kind must have been presented to the attention of the court. Upon these facts can the appellant's right to an appeal be sustained?

It was adjudged in *Blossom v. Milwaukee &c. Railroad Co.*, 1 Wall. 655, that a bidder at a marshal's sale makes himself thereby so far a party to the proceedings that for some purposes he has a right of appeal. It was said by Mr. Justice Miller, in the opinion of the court, that "it is certainly true that he cannot appeal from the original decree of foreclosure, nor from any other order or decree of the court made prior to his bid. It, however, seems to be well settled that, after a decree adjudicating certain rights between the parties to a suit, other persons having no previous interest in the litigation may become connected with the case, in the course of the subsequent proceedings, in such a manner as to subject them to the jurisdiction of the court and render them liable to its orders; and that they may in like manner acquire rights in regard to the subject matter of the litigation, which the court is bound to protect." "A purchaser or bidder at a master's sale in chancery subjects himself *quoad hoc* to the jurisdiction of the court, and can be compelled to perform his agreement specifically. It would seem that he must acquire a corresponding right to appear and claim, at the hands of the court, such relief as the rules of equity proceedings entitle him to." It

follows from this decision that his right of appeal must extend to all matters adjudicated after his bid, which affect the terms of that bid, or the burdens which he assumes thereby, and which are not withdrawn from his challenge by the terms of the decree under which he purchases. If by the decree the sale is to be made subject to certain conditions, the purchaser acquires no right to be heard as to those conditions, either in the trial or appellate courts. Such was the ruling in *Swann* v. *Wright's Executor*, 110 U. S. 590, in which it was adjudged that, where a decree directed that a sale should be made subject to liens established or to be established, on references previously had or then pending before a master, a purchaser at such sale would not be heard either in the trial or appellate court to dispute the validity of the liens thus established. This ruling was placed distinctly on the ground that by the very terms of the decree the purchaser was to take the chances of the allowance of all the claims then pending, and, therefore, their validity and extent was a matter simply between the claimants and the parties to the mortgage; but the contingency now presented was foreshadowed in the opinion, for it says: "If the court had, in the decree of sale, reserved to the purchaser, although not a party to the proceedings, the right to appear and contest any alleged liens then under examination, and, therefore, not established by the court, an entirely different question would have been presented. But no such reservation was made; and the purchaser was required, without qualification, to take the property, upon confirmation of the sale, subject to the liens already established, or which might, on pending references, be established as prior and superior to the liens of the first mortgage bondholders."

The right of purchasers at a foreclosure sale to be heard on the question of compensation to trustees and others, both in the trial and appellate courts, was affirmed in *Williams* v. *Morgan*, 111 U. S. 684, when, as in that case, by the terms of the decree, the amount of such compensation placed an additional burden upon the purchasers. The case of *Swann* v. *Wright's Executor*, *supra*, was referred to in the opinion, and

distinguished on the ground of the express provisions in the decree as to the terms of sale. See also *Stuart* v. *Gay*, 127 U. S. 518; *Central Trust Co.* v. *Grant Locomotive Works*, 134 U. S. 207. Deducible from these authorities, as applicable to the facts in this case, and supported by sound reasons, are the following propositions: First. A party bidding at a foreclosure sale makes himself thereby a party to the proceedings, and subject to the jurisdiction of the court for all orders necessary to compel the perfecting of his purchase; and with a right to be heard on all questions thereafter arising, affecting his bid, which are not foreclosed by the terms of the decree of sale, or are expressly reserved to him by such decree. Secondly. Where not concluded by the terms of the decree, any subsequent rulings which determine in what securities, of diverse value, his bid shall be made good, are matters affecting his interests, and in which he has a right to be heard in the trial court, and by appeal in the appellate court. In the case at bar, it is obvious that the amount of intervening claims to be subsequently allowed was a matter affecting the interests of the purchaser, and in terms reserved to him by the decree of sale. Supplementing and strengthening this right, reserved and substantial, is the recital in the allowance of the appeal that the party purchasing is himself a bondholder, and trustee and representative of the other bondholders; which, if not conclusive as to the extent of interest in the litigation, is not to be ignored as wholly a matter of surplusage, but ought to be assumed as correct; and which is not to be disregarded simply because the evidences of that fact are not preserved in the record.

These conclusions compel an inquiry as to the validity of the adjudications in respect to the intervening claims. They were for the rental of rolling stock, and our examination must, therefore, proceed to the facts upon which the adjudications were made: This rolling stock was obtained by the railroad company, a consolidated corporation, from certain manufacturers, the appellees herein, on contracts of purchase. These in form were leases, but, in substance, and properly so adjudged, were contracts of purchase, reserving title in the

vendors until after the payment of certain annual sums, called rents, and with the right to retake possession on default in payment. Full payment of the purchase price was never made.

The first bills under which the receiver was appointed were filed August 1, 1883, by a judgment creditor. The trustees in the several mortgages were made parties to these bills. They entered their appearance, and, neither objecting nor consenting, the receiver was appointed. Such receivership was continued four months and until December 1, 1883, at which time bills were filed by the trustees for the foreclosure of their mortgages and a receiver was appointed thereunder. The first inquiry presented is whether rentals for such period were properly given priority over the mortgage debts. That question must be answered in the negative. It is important to note these facts: First. This case is not embarrassed by any matter of surplus earnings, for it appears beyond any possibility of doubt, that from the time of the purchase of this rolling stock to the time of the final disposition of these cases the receipts did not equal the operating expenses. There was no diversion of the current earnings, either to the payment of interest or the permanent improvement of the property. In fact, but little interest was ever paid on the bonds. *Railroad Co.* v. *Railway Co.*, 125 U. S. 658, 673. Second. The receivership was at the instance of a judgment creditor, and was with a view of reaching the surplus earnings for the satisfaction of his debt. It was not at the instance of mortgagees, nor were they seeking foreclosure of their mortgages. They were asking nothing at the hands of the court. They were not asking it to take charge of the property, or thus impliedly consenting to its management of the property for their benefit. Third. This rolling stock was not included in the sale, but was returned to the interveners upon orders entered prior to the decree of sale. So that only that property was sold which was covered by mortgages executed prior to any contract with the interveners with respect to rolling stock, and it is the proceeds of this sale which the interveners are seeking to appropriate. They cannot say that their property was sold, or that by such fact they have an interest in the proceeds of sale. Fourth.

The sale realized only a small proportion of the mortgage debts. There was no surplus above the mortgages for distribution to the interveners or among general creditors. In fact, only a small fraction of the mortgage debt was realized. Fifth. During these four months no demand for possession or rental was made of the receiver by any of the interveners, or any one for them, with the single exception of what may be known as the " Grant " claims, and in respect to them the demand for possession was met by refusal on the part of the receiver and a proposition for purchase at the unpaid portion of the purchase price, which proposition was accepted by such interveners, but never finally carried into effect.

Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its per-

sonal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea, that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens. *Railroad Co.* v. *Railway Co.*, 125 U. S. 658, 673. So that these interveners acquired no right of priority by virtue of their antecedent contracts of sale.

But it is urged, and with force, that the court did not allow contract price, but only rental, and the question is asked, may a court, through its receiver, take possession of property and pay no rental for it? If it may legitimately compel the operation of the railroad in the hands of its receiver, in order to discharge the obligations of the company to the public, may it not also, and must it not also, burden that receivership, and the property in charge of the receiver, with all the expenses connected with the operation of the road, together with reasonable rentals for the property used and necessary for the operation of the road? As to the general answer to these inquiries, we have no doubt. A court which appoints a receiver acquires, by virtue of that appointment, certain rights and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are burdens necessarily on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. So if, at the instance of any party rightfully entitled thereto, a court should appoint a receiver of property, the same being railroad property, and therefore under an obligation to the public of continued operation, it, in the administration of such receivership, might rightfully contract debts necessary for the operation of the road, either for labor, supplies or rentals, and make such expenses a prior lien on the property itself; and it is in reliance on this general proposition that the interveners insist on an affirmance of the decree.

But as against this we are confronted with these facts: The court never made any order for the rental of this rolling stock, and the situation of all the parties during this four months receivership was this: The railroad company, with its franchises for building and operating a railroad, was in equity, whatever may have been the location of the legal title, the owner of realty, subject to certain fixed mortgage indebtedness, and of personalty, the rolling stock in question, subject to certain fixed liens. The creation, in the first instance, of those liens gave to neither lien-holder, as against the other, priority in payment otherwise than in respect to the property specially charged with those liens. The holder of the lien on the real estate could not insist that both the real estate and the personalty should be subjected to the payment of his debt, before payment to the holder of the lien on the personalty of his claim, out of the proceeds of its sale. Neither, on the other hand, could the holder of the lien on the personalty insist that his lien should be first paid out of any proceeds of the realty. Each was limited to his priority of right on the property on which his lien rested. Under those circumstances, neither the holder of the lien on the real or the personal property moving in the premises, a general creditor of the common debtor invoked for the payment of his debt the intervention of a court of equity and the possession of all the property charged with these two liens, and its operation with a view to the collection of his unsecured claim. The operation of the road during that receivership did not pay the operating expenses. May the holder of a lien on the real estate insist that the deficiency be charged to the holder of the lien on the personalty, or that the latter shall become liable to the former for the rental of its property? Unquestionably not. Neither lien-holder asking the aid of the court, no obligation was assumed by either in respect to the management of the property as against the other. If the operation of the property seized by the receiver did not result in the payment of the operating expenses, and the common debtor was unable to pay, the burden of the deficiency is as properly cast upon the holder of a lien upon the personalty as upon the holder of a lien upon the

realty; and when the court, in the administration of the receivership, thereafter returns the personalty to the holder of the liens upon it, such lien-holder must be content to be relieved from any burden for a *pro rata* share of the deficiency, and has no equity to claim that he shall be not only thus relieved, but that he may also charge upon the realty, to the detriment of the lien-holder thereon, both the entire burden of the deficiency and compensation to him for the use of his property. Hence it follows that neither by reason of a contract of purchase of the rolling stock, nor by its use for four months at the instance of a general creditor, was any burden cast upon the holder of a lien upon the real estate for the non-payment of such contract price or the rental value. The court therefore erred in charging rental value of the rolling stock during those four months as a prior lien upon the realty.

On the 1st of December, 1883, however, the situation was changed. At that time the mortgagees upon the realty commenced suits to foreclose their mortgages, and at their instance, a receiver was appointed for all the property, both real and personal. In respect to the question here involved, the case is as though this was the commencement of judicial proceedings; and in that respect the attitude is this: The railroad company owned real and personal property, each subject to a separate lien. The holder of the lien upon the realty commences suit to foreclose its lien, and asks the court to take possession, through its receiver, of both the real and personal property. In the latter it had a remote interest, though subordinate to existing liens. The court, responding to its demands, takes possession of all the property, real and personal. Now, when the holder of a first lien upon the realty alone asks the court of chancery to take possession, not only of the real but also of personal property used for the benefit of the real, that application is a consent on its part that the rental value of the personalty thus taken possession of and operated for the benefit of the realty shall be paid in preference to its own claim. The proposition is a simple one. The application may not be a consent that the contract price of the personalty shall be paid in preference to his lien;

but it certainly is a consent that the rental value of that personalty, during the time of the possession by the receiver appointed at his instance, may have priority to his claim.   If the holder of a lien upon the realty does not think that the continued possession of. the personalty is a benefit to his lien, he should simply omit the personalty from his bill, and ask the court to take possession of the realty alone.   But either because he believed that the possession of the personalty was necessary for the operation of the railroad, and the security of his claim; or else because, by virtue of his secondary right, he expected to pay for the personalty and retain both the personalty and the realty, he has had the court take possession of both by its receiver, and by that act, although subsequently the personalty was returned to the holder of the lien upon it, he consented to the payment of reasonable rental pending the receiver's possession.   The conclusion is irresistible, that under the circumstances reasonable rental value was properly allowed as a prior claim to the mortgage indebtedness.   Indeed, we do not understand that counsel for appellant seriously contest this proposition.   Their contention substantially is, that the basis of such rental value was wrong; that the rental should only be on the basis of actual use — the " mileage system," as it is known in railroad parlance ; that, in fact, the railroad company had acquired too much rolling stock, and so, averaging it, the mileage was quite small; whereas the master, as approved by the court, fixed the rental not at actual mileage, but at a reasonable value irrespective of the actual use.   We think that the decision of the court was right.   The initiative in the matter was taken by the trustees.   They asked, by their bill, that the court take possession of all the personalty. If more was taken possession of than was needed, it was their mistake.   The court is not to be assumed to be an experienced railroad manager, knowing exactly the amount of rolling stock needed for the operation of the road.   It may justly assume that what had been contracted for was necessary, and if the trustees ask that all may be taken possession of, it may act upon that as a declaration that all is necessary, and that rental value is to be paid for all.   Theirs is the inquiry, and not the

court's.  It is a mistake to suppose that their duties in respect to the foreclosure proceedings are formal merely, or limited to the employment of counsel and the handling of securities. They assume all the obligations of a party to the suit.  They are charged with the care of the entire mortgage interest. They ask and receive large allowances for caring for that interest; and it is a part of their duty to make examination and become fully informed in respect to the property, its liens, what is needed for its operation, and what can prudently and safely be dispensed with.  Upon such information their application should be based.  It is true the court is not concluded by their representations; but its information is in the first instance derived therefrom, and it may and does generally act upon them; and its action, based on them, must be held to be conclusive so far as concerns the interest they represent, in respect to all liabilities and obligations flowing from the possession of a receiver.  Whatever action the court may take thereafter, on information furnished by its receiver, or by them, or otherwise, in respect to the property not primarily chargeable with their lien, its first action is the recognition of the validity of their application; and the taking possession of all the property they name is in reliance upon their representation that all is needed for the operation of the railroad, and that they consent either to the payment of the unpaid purchase price of any property thus taken possession of, or a reasonable rental for the use of the same.  Consider for a moment the ordinary experience of railroad building, as developed in the story of this case.  The franchise is acquired; the corporation organized; and a first mortgage placed upon the property, with the usual "after acquired property" clause in it. The construction of the railroad proceeds; it is finished; rolling stock is necessary; and the corporation acquires it under conditional contracts of purchase.  The enterprise is a failure; the mortgage interest is unpaid; the trustee, discharging its duty, is bound to know that the rolling stock is held subject to the liens attending its purchase.  It asks the court to take possession not alone of the realty but also of the rolling stock thus acquired and held.  The application is not resisted.  The

court is ignorant of the history of the enterprise; it sustains the application and appoints a receiver, and the rolling stock is taken possession of by that receiver. Can it be held that such possession, taken at the instance of the trustee, casts no burden on the road, either for purchase price or rental prior to the claim of the original mortgage? Can the trustee, forcibly, through the power of a court, compel an appropriation of this rolling stock for the benefit of the property subject to its lien without compensation? Does not its application for possession carry with it an assent that rental for such rolling stock shall be first paid, as one of the expenses of the receivership which it has invoked? But one answer can be made to this inquiry, and that is that its application is a consent to the payment of reasonable rental during the possession of the receiver — a rental not based upon the use actually made by the receiver, but on the ordinary value of the rental of such property. So, although it may be true, as claimed by counsel, that more was taken possession of than was needed, and that there was only a limited use of each car and engine, yet the case is to be taken as though all were needed and full use made of all; and that sum which would be reasonable rental value for such use should be paid. Such value is not to be determined by the amount of actual use, but by what, in the first instance and before the use had been had, would be adjudged a reasonable rental value. Upon such basis no complaint can be made of the amount fixed by the court, reducing as it did the amount reported by the master.

These are the only matters which, by the exceptions filed to the master's report respecting rentals, were reserved for our consideration. Our conclusion, therefore, in the two cases is, that the decrees must be

*Reversed, and the cases remanded with instructions to strike out all allowances for rental prior to December 1, 1883, the time when the receiver was appointed at the instance of the mortgagees, and to allow the rentals as fixed for the time subsequent thereto.*

*Counsel for the Grant claims expressly stated, in open court, in his argument, that in case certain appeals from the*

*Sixth Circuit were affirmed there might result a double allowance to his clients, which they did not insist upon. As the details and sum are not clearly presented, we can only say that this matter must be taken into account in the subsequent disposition of the cases.*

MR. JUSTICE BRADLEY dissented.