JACK v. WILLIAMS et al.

In re CHARLESTON & W. C. RY. CO.

(Circuit Court, D. South Carolina. January 26, 1901.)

RAILROADS—CONVEYANCE BY PURCHASERS AT FORECLOSURE SALE—EFFECT OF PENDING SUIT.

At a foreclosure sale of the property of a railroad company it was purchased by one person on behalf of himself and two others, and the sale was duly confirmed. But a small portion of the road had been completed, and its operation was abandoned. Subsequently one of the purchasers brought a suit against the other two for partition of the property, alleging that the road could not be operated except at a ruinous loss. A receiver was appointed, who, by order of the court, removed the rails from a portion of the road, when certain third persons intervened, some to prevent the abandonment of the road, and others asserting ownership in portions of the right of way in case of abandonment. While the case stood in that condition the original parties to the suit united in a deed conveying a portion of the road, with the tracks and buildings thereon, together with all the personal property in the hands of the re-

ceiver, to·another railroad company, in which deed the receiver joined. *Held* that, without considering the effect of such deed upon the personalty in the hands of the receiver, there was nothing in the pending suit which devested the title of the grantors to the real estate, and that the deed was effective to convey such title to the grantee, subject to· any public obligations, private equities, or legal rights in third parties which might be established to affect the same.

In Equity. On petition of the Charleston & Western Carolina Railway Company for confirmation of its title to certain property conveyed to it by the original parties to the suit during its pendency. See 102 Fed. 210.

J. R. Lamar, S. J. Simpson, J. P. Cothran, and B. A. Hagood, for petitioner.
Joseph H. Barnwell and Julius H. Heyward, for respondents.

SIMONTON, Circuit Judge. This case now comes up on the petition of the Charleston & Western Carolina Railway Company to show cause why title to certain property claimed to have been purchased by them be' not confirmed. The petition and returns were referred to a special master to take testimony thereon. The testimony has been taken, and has been reported by him. Very much of this testimony, if it has any bearing at all upon the issues made in the petition, is of the most remote character. Some of it has no relevancy at all to it. The Carolina, Knoxville & Western Railway Company, the name finally given to the corporation first created under the name of the Greenville & Port Royal Railroad Company, was authorized, under its amended charter, to construct a railroad from Augusta, in the state of Georgia, to Knoxville, in the state of Tennessee. A portion of the road was graded, but no part of it was constructed except a small portion lying between the city of Greenville and the town of Marietta, some 12 miles. Bonds were issued for the construction of the whole road, and a mortgage executed to secure them. By proceedings taken in this court, this mortgage was foreclosed, and a sale finally had thereunder. At this sale James T. Williams became the purchaser. The sale, having been reported, was confirmed, and conveyance was made to him of all of the mortgaged property. The purchaser took no steps to operate the road, and mandamus proceedings were begun against him in the state courts for the purpose of compelling him to do so. These proceedings came to naught, because it was decided that the judge before whom they were brought, and who had granted the mandamus, had no jurisdiction in the case. Pending these proceedings, a bill was filed in this court, on the 27th day of April, 1897, by D. F. Jack against J. T. Williams and H. C. Beattie. Among the allegations of this bill were that James T. Williams purchased this property for himself and D. F. Jack and H. C. Beattie, and that, although the title was taken in his name, they were co-owners with him; that it was impossible to operate the property purchased, except at a ruinous loss. The bill prayed that the defendants be enjoined from organizing with this view, and that a partition be made of the several interests therein, and to this end that the prop-

erty be sold. The bill prayed also for the appointment of a receiver. On the filing of the bill, a receiver, W. C. Cothran, was appointed, and a temporary injunction issued as prayed for in the bill. In the meantime the legislature of South Carolina had passed an act (22 St. at Large, p. 533) requiring the owners or purchasers of abandoned or unused railroad property to organize within 60 days from the passage of the act (March 5, 1897), providing a money penalty for failing so to do, and, in addition to such penalty, providing that all the franchises, powers, and privileges of the railroad so purchased be forfeited.

The receiver, under the proceedings for partition above mentioned, was appointed to take charge of the property, and was authorized to take up and remove the rails and iron from the abandoned road-bed, and was required to haul and store the same in the city of Greenville, ready to be delivered to whomsoever might purchase the same. On the 19th April, 1899, D. F. Jack, James T. Williams, and H. C. Beattie, by their deed, in which also W. C. Cothran, receiver, joined, conveyed to the Charleston & Western Carolina Railway (1) all that strip of land in the city of Greenville, county of Greenville, state of South Carolina, extending from a point in the city of Greenville on the track of the Charleston & Western Carolina Railway Company, within the city of Greenville, to the western limits of the city of Greenville, being about 15 feet in width and 6,000 feet in length, together with all trestles, rails, ties, and iron thereon, said strip being formerly used as a part of the right of way of said Carolina, Knoxville & Western Railway; (2) also all houses, depots, trestles, bridges, or real estate located in the city of Greenville, county of Greenville, state of South Carolina, which formerly belonged to the Carolina, Knoxville & Western Railway Company, with the right to the Charleston & Western Carolina Railway Company to use the real estate in said city, and to operate cars over the right of way within said city of Greenville; (3) also all the equipment and rolling stock formerly belonging to the Carolina, Knoxville & Western Railway Company, consisting of one engine, one passenger car, five box cars, twelve flat cars, be the same more or less; (4) also 1,263 tons, more or less, of steel and iron rails, bolts, angle bars, and spikes, now stored in the city of Greenville, which is contemporaneously herewith pointed out, identified, and delivered to the party of the second part. This deed was duly executed and delivered, the purchase money having been paid in cash. The purchaser took into its possession all the rails which had been removed by the receiver, and now files its petition for leave to enter and take possession of that part of the railroad purchased by it from the parties to the main cause. The deed was never put on record. On 27th March, 1899, some days prior to the date and delivery of this deed, Mays Cleveland and others had filed a petition in the main cause, praying leave to intervene for the purpose of resisting the abandonment and dismantling of the road, and the prayer of their petition was granted. None of these petitioners are stockholders in, or bondholders of, the insolvent company. On the next day (28th March, 1899), Bramlett and others, owners of land through which

the road ran, also filed their petition for leave to intervene for the purpose of protecting their rights, in the event of the re-establishment of the road, or, in case this be not done, in the event of its total abandonment. To the rule to show cause issued upon the filing of the petition of the Charleston & Western Carolina Railway Company these interveners were made parties, and have shown cause resisting the prayer of the petition. The return of Cleveland and others goes upon the ground that the railroad should not have been abandoned and dismantled; that of Bramlett and others goes upon the ground that the abandonment of the road resulted in the reversion of all the railroad property to the landowners through whom the road ran. Both deny the validity of the deed under which the petitioner holds.

There can be no doubt that the sale of the railroad property under proceedings in foreclosure was a valid sale, and that the purchaser took a good title. The conveyance vested that title in J. T. Williams, and he admits that he held for himself, D. F. Jack, and H. C. Beattie. The proceedings for partition, which is the main cause now, did not change or disturb these vested rights, nor did the appointment of a receiver either vest title to the property in him (Union Bank v. Bank of Kansas City, 136 U. S. 223, 10 Sup. Ct. 1013, 34 L. Ed. 341), or change the title in any way, nor does it vest in the court absolute control of the property (Kneeland v. Trust Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379).

The purpose of the proceedings begun by D. F. Jack was the prevention of an organization for the purpose of operating the road, and a consequent partition. It was perfectly competent, therefore, for either Jack, Williams, or Beattie, all or any of them, to part with the interest purchased by them at the foreclosure sale. They could do this without first asking the leave of the court. They did so in this deed. The action of the receiver, who joins with them, and attempts to sell the rails and other personalty put into his hands by the court, and held by him under the order of the court, being unauthorized, may be void. But, as he does not profess to act for them, his action cannot avoid the binding force of their deed. Whatever their estate, right, title, and interest was they conveyed to the Charleston & Western Carolina Railway Company. At the foreclosure sale they got all that purchasers at such a foreclosure sale could get,—no more, no less. This, and nothing more, they conveyed to the petitioner. Whether they took the property burdened with obligations to the public, or with equities or legal rights of third persons, and with what obligations, equities, or legal rights, it is at this stage of the case premature to decide. Their rights are specially protected in "An act to repeal an act entitled 'An act to charter the Greenville & Port Royal Railroad Company,' approved 23d December, 1882, and all acts amending the same," approved 17th February, 1900 (23 St. at Large, p. 566):

"This repeal shall not affect so much of the property situated in the county of Greenville of said railroad company or any successor thereof or of any other railroad company with which it was at any time consolidated, nor the owner or purchaser or purchasers of such railroad or railroads or any part

thereof situated in the county of Greenville, nor any purchaser or purchasers of any rights or franchises whatever passing to them."

So much of this deed as conveys the estate and interest of Messrs. Jack, Williams, and Beattie to the Charleston & Western Carolina Railway Company, in the strip of land in the city of Greenville mentioned in paragraphs 1 and 2 in the quotation of said deed above made, is valid, subject to any public obligations, private equities, or legal rights in third parties, if any such exist. Its right to the rails and all questions respecting them and the sale of them are reserved.