ROYAL TRUST CO. et al. v. WASHBURN, B. & I. R. RY. CO.*

JOHN O'BRIEN LUMBER CO. v. ROYAL TRUST CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   October 7, 1902.)

No. 860.

1. RECEIVERS—CERTIFICATES—VENDOR'S LIEN—PRIORITY.
    The seller of rails to a railroad company, reserving a valid lien thereon for their price, may not enforce the lien, as against the certificates of the receiver of the road, duly issued by the court in the administration and maintenance of the property.

Appeal from the Circuit Court of the United States for the Western District of Wisconsin.

Richard Sleight, for appellants.
M. F. Gallagher, for appellees.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge.   The appellees, the Royal Trust Company and Horace S. Oakley, are trustees under a mortgage given by the Washburn, Bayfield and Iron River Railway Company, a corporation of Wisconsin, to secure its bonds to the extent of five hundred and thirty-five thousand dollars.  The mortgage covered the right of way, together with all grades, bridges, culverts, ties, rails, rolling stock, cars, engines, outfits, and property of every description, including privileges and franchises belonging, or appurtenant to the railroad.   The appellee, A. C. Frost, is the Receiver of the road, appointed by the Circuit Court for the Western District of Wisconsin December 24th, 1898.

The appellant, the John O'Brien Lumber Company, a corporation of Wisconsin, is a creditor of the railroad company, to the extent of four thousand, five hundred and eighteen dollars and twenty-nine cents; three thousand, three hundred dollars of which was for rails sold to the railroad company, upon which it claims a specific vendor's lien.

* Rehearing denied November 15, 1902.

¶ 1. Nature of receivers' certificates, see note to Postal Tel. Cable Co. v. Vane, 26 C. C. A. 350.

The main case, in which appellee intervened, was to foreclose the mortgage mentioned, for default in the payment of interest; and, pending foreclosure, for a receiver. The receiver appointed, as, above stated, took possession of the road December 24th, 1898, including in such possession, the rails purchased of appellant. The decree of the Circuit Court, entered July 5th, 1901, ordered that in default of the payment of the receiver's expenses, and of the principal and interest due on the bonds, the property of the railroad company be sold, and the funds arising therefrom, distributed as follows: first, the expenses of executing the decree, and of administration, including the receiver's certificates; then to the payment of the bonds. On the same day—July 5th, 1901—the intervening claims, including appellant's, as far as they sought a preference or lien, were denied and dismissed. From both decrees this appeal is prosecuted.

In the view we have taken of the case, it is unnecessary to consider many of the interesting questions argued. It is shown that the court, in the administration of the property through its receiver, has issued receiver's certificates, pledging for the payment thereof, the property and income of the railroad company, to the amount of two hundred and twenty thousand, five hundred and eighty-one dollars; and that the upset price fixed in the decree for the sale of the road, was two hundred and twenty-five thousand dollars; sufficient only to pay the receiver's certificates, and the costs of administration. It was admitted at the argument, that the road had not sold for more than this amount. The question that arises, therefore, is this: Will the vendor of rails to a railroad company, reserving to himself a valid lien upon the rails sold, be allowed to enforce that lien, not only against the railroad company, and its mortgagees, but also against the receiver's certificates duly issued by the court in the administration and maintenance of the property.

The certificates were issued, as the orders show, to procure funds for wages, operating expenses, maintenance and repairs, purchase of rolling stock and of rails, and for other purposes not specifically mentioned. The first were issued January 3rd, 1899, and the last April 9th, 1901.

The appellant became a party to the suit May 29th, 1899, after certificates to the amount of about one hundred and sixty-one thousand dollars had been issued. There is no proof in the record, that appellant had no notice from time to time of these orders. Nor is there any attack upon the orders, upon the ground, either that the money was not needed, or that it was improvidently expended, or that there should have been an earlier cessation of the operation of the road by the receiver. Standing thus unimpeached, the orders of the court carry the presumption that the money was needed, and was providently spent in execution of the court's duty toward the property in its possession.

The rails purchased of appellant, upon which the lien is claimed, had been laid originally upon spurs leading into the timber lands tapped by the road. The larger portion of the rails were on lands not belonging to the railroad right of way; but from time to time the rails were taken up from the lands tapped, many of them being

relaid in the main line. There can be no question that the rails were a part of the property of the railroad company, and, as such, included within the receiver's possession, and within the description of the property pledged by order of the court to the payment of the receiver's certificates.

In Union Trust Co. v. Illinois M. R. Co., 117 U. S. 434, 6 Sup. Ct. 809, 29 L. Ed. 963, the Supreme Court said:

"Property subject to liens and claims and debts, of various characters and ranks, which is brought within the cognizance of a court of equity for administration, and conversion into money, and distribution, is a trust fund. It is to be preserved for those entitled to it. This must be done by the hands of the court, through officers. The character of the property gives character to the particular species of preservation which it requires. Unimproved land may lie idle, with only payment of taxes. Improved property should be rented. Movable property that is not perishable may be locked up and kept; but if perishable, it must be sold, by way of preservation. A railroad, and its appurtenances, is a peculiar species of property. Not only will its structures deteriorate and decay and perish if not cared for and kept up, but its business and good will will pass away if it is not run and kept in good order. Moreover, a railroad is a matter of public concern. The franchises and rights of the corporation which constructed it were given not merely for private gain to the corporators, but to furnish a public highway; and all persons who deal with the corporation as creditors or holders of its obligations must necessarily be held to do so in the view, that, if it falls into insolvency and its affairs come into a court of equity for adjustment, involving the transfer of its franchises and property, by a sale, into other hands, to have the purposes of its creation still carried out, the court, while in charge of the property, has the power, and, under some circumstances, it may be its duty, to make such repairs as are necessary to keep the road and its structures in a safe and proper condition to serve the public."

In view of the law laid down in that case, and of the fact that so far as this record discloses, the Circuit Court rightly felt itself obliged to continue operations, and make repairs—at least until full experience had shown the contrary—we do not see how we can hold otherwise than that the certificates thus issued are a first lien; prior to the bonds, and prior to any possible lien of a vendor for purchase price of rails. All claims against the railroad as debtor—whatever their priority as between creditors—became subordinated to the power of the court to operate the railroad property. As expenses of legitimate administration, the receiver's certificates must be met before question of priority among creditors is reached. Kneeland v. Trust Co., 136 U. S. 98, 10 Sup. Ct. 950, 34 L. Ed. 379.

The decree of the Circuit Court will be affirmed.