## UNITED STATES & MEXICAN TRUST CO. et al. v. BEATY et al.

### (Circuit Court of Appeals, Eighth Circuit. May 29, 1917.)

### No. 4550.

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

On petition for rehearing. Rehearing denied, and former opinion (240 Fed. 592) sustained.

REED, District Judge. The appellants in No. 4550 have filed a petition for rehearing in the above cause, upon the ground alone as alleged:

"That the opinion of this court is in direct conflict with the majority opinion of the Supreme Court in the Gregg Case" (Gregg v. Metropolitan Trust Company, 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717).

That the majority opinion in that case has limited in some particulars the prior opinion of that court in Miltenberger v. Logansport Ry. Co., 106 U. S. 286, 1 Sup. Ct. 140, 27 L. Ed. 117, and some other

cases, which has resulted in a diversity of opinions in the lower federal courts, may be admitted, but that it does not overrule the Miltenberger, and other similar cases, is not doubted. The facts and grounds upon which the receivers were appointed in this case are stated at some length in the opinion heretofore filed and need not be restated. In the Gregg Case a receiver was appointed June 1, 1897, in a proceeding to foreclose two mortgages upon a railroad property; the grounds upon which he was appointed are not stated. After his appointment there was found on hand a quantity of railroad ties of the value of some $3,200 which were used in the maintenance of the road as a going concern. The petitioner Gregg made a claim on the funds in the hands of the receiver for the value of these ties, because he had not been paid for them, and they had not been returned to him by the receiver. The Circuit Court of Appeals affirmed an order of the Circuit Court which established the claim as a six months claim, but denied priority of payment therefor from the body of the fund, and the case went to the Supreme Court upon certiorari. The Supreme Court said of the case:

"The case stands as one in which there has been no diversion of income by which the mortgagees have profited, or otherwise, and the main question is the general one, whether in such a case a claim for necessary supplies furnished within six months before the receiver was appointed should be charged on the corpus of the fund. There are no special circumstances affecting the claim as a whole, and if it is charged on the corpus it can be only by laying down a general rule that such claims for supplies are entitled to precedence over a lien expressly created by a mortgage recorded before the contracts for supplies were made. An impression that such a general rule was to be deduced from the decisions of this court led to an evidently unwilling application of it in New England R. Co. v. Carnegie Steel Co., 75 Fed. 54, 58 [21 C. C. A. 219], and perhaps in other cases. But we are of opinion, for reasons that need no further statement (Kneeland v. American Loan & Trust Co., 136 U. S. 89, 97 [10 Sup. Ct. 950, 34 L. Ed. 379]), that the general rule is the other way, and has been recognized as being the other way by this court."

The Miltenberger Case is then referred to and the opinion continues:

"But while the payment of some pre-existing claims was sanctioned in that case, it was expressly stated that 'the payment of such debts stands, prima facie, on a different basis from the payment of claims arising under the receivership.' The ground of such allowance as was made was not merely that the supplies were necessary for the preservation of the road, but that the payment was necessary to the business of the road—a very different proposition. In the later cases the wholly exceptional character of the allowance is observed and marked [citing the cases]. In Union Trust Co. v. Illinois Midland Ry., 117 U. S. 434, 465 [6 Sup. Ct. 809, 29 L. Ed. 963], labor claims accruing within six months before the appointment of the receiver were allowed without special discussion, but the principles laid down in the Miltenberger Case had been repeated in the judgment of the court, and the allowance was said to be in accordance with them. * * * But the payment of the employés of the road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts." (But for what reason is not stated.)

In Kneeland v. American Loan Co., 136 U. S. 89, 10 Sup. Ct. 950, 34 L. Ed. 379, cited with apparent approval in the majority opinion in the Gregg Case, we call attention to the particular facts, without reciting them, upon which the court denied the priority of the claim

for rental of certain rolling stock prior to December 1, 1883, but allowed such rental for the rolling stock after that date, because the mortgagee upon that date applied for and obtained the appointment of the receiver. Mr. Justice Brewer, speaking for the court, said (136 U. S. at page 98, 10 Sup. Ct. at page 953, 34 L. Ed. 379):

"But it is urged, * * * that the court did not allow contract price, but only rental (for the rolling stock), and the question is asked: May a court, through its receiver, take possession of property and pay no rental for it? If it may legitimately compel the operation of the railroad in the hands of its receiver, in order to discharge the obligations of the company to the public, may it not also, and must it not also, burden that receivership, and the property in charge of the receiver, with all the expenses connected with the operation of the road, together with reasonable rentals for the property used and necessary for the operation of the road? As to the general answer to these inquiries, we have no doubt. A court which appoints a receiver acquires, by virtue of that appointment, certain rights and assumes certain obligations, and the expenses which the court creates in discharge of those obligations are burdens necessarily on the property taken possession of, and this, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. So if, at the instance of any party rightfully entitled thereto, a court should appoint a receiver of property, the same being railroad property, and therefore under an obligation to the public of continued operation, it, in the administration of such receivership, might rightfully contract debts necessary for the operation of the road, either for labor, supplies, or rentals, and make such expenses a prior lien on the property itself."

See, also, Union Trust Co. v. Souther, 107 U. S. 591, 2 Sup. Ct. 295, 27 L. Ed. 488, cited in the majority opinion in the Gregg Case with apparent approval, but distinguishes it upon certain grounds from the Gregg Case, where supplies furnished within the six months period for the operation of the road were allowed priority in payment from the proceeds of the sale of the property by the receivers, because the trustee of the bondholders who had procured the appointment of the receivers and consented to the use of the earnings of the receivership for the improvement and preservation of the road, instead of paying such claims as the receivers were authorized to pay by the order of court appointing them. Mr. Chief Justice Waite said of this transaction (107 U. S. at page 595, 2 Sup. Ct. at page 298, 27 L. Ed. 488):

"Clearly, therefore, on the face of the transaction, the fund in court represents in equity the income which belongs to the labor and supply creditors as well as the mortgage security, and there was no impropriety in appropriating it as far as necessary to pay the creditors especially provided for when the receiver was appointed."

This is sufficient to show that the majority opinion in the Gregg Case recognizes that there may be cases wherein the payment for labor rendered and supplies furnished necessary to keep the road in operation and preserve its property and business from sacrifice, deterioration, or waste during the six months period preceding the appointment of the receivers, or thereafter, may be allowed from the corpus of the property in the hands of the receiver.

In the Souther and Kneeland Cases the supplies furnished and the rentals allowed for the rolling stock were not to pay expenses of the receivership, but for supplies and rentals furnished during the six

months period preceding the appointment of the receiver, while in the present case the complainant trust company, representing the bond-holders, joined in the application for the appointment of the receivers and requested that they be authorized to take possession of the rail-road property and continue its operation under the order of the court until such time as the bondholders might effect a reorganization of the road, arrange for the payment of its obligations, including supply demands, and preserve the property until that could be accomplished. The receivers were accordingly appointed, and almost simultaneously with their appointment the 92 cars of coal in question came into their custody, or it may be the possession of the road; but this coal was received by the receivers and used by them in the operation of the road thereafter, and they were authorized under the order of the court appointing them to pay therefor. Even under the majority opinion in the Gregg Case and the cases cited therein with approval, we are of opinion that the trial court was clearly justified in directing its receivers, under the special circumstances shown, to pay for such coal from income in their hands, and, if none, then from the proceeds of the property arising from the sale thereof, as a proper and necessary expense of the receivership, inasmuch as they used the coal in lieu of purchasing other coal to take its place in keeping the road in oper-ation.

The petition for rehearing is denied.