# GREGG COMPANY

*v.*

# UTUADO SUGAR COMPANY.

San Juan, Equity, No. 898.

EQUITY ADMINISTRATION.

Equity—Contract Liens.

    1. Equity will not displace contract liens, although from the necessity of the case it may postpone their enforcement to the expenses of administration and preservation.

Courts—Coram non Judice.

    2. Under the American law a court is a tribunal furnished by the state for the settlement of disputes, and is not a branch of the government to declare law in general. A person not before the court is not affected.

Trustee—Intervention.

    3. It is not necessary for a trustee under a mortgage to intervene in a proceeding until his rights are directly concerned.

Trustee—Master.

    4. This individualistic view of litigation applies to reports made by a master or other subordinate officials.

Liens—Not Appealed from.

    5. Where the court has ascertained liens and the adjudication has not been appealed from for several terms, they will not be disturbed.

Gregg Co. v. Utuado Sugar Co.

Preservation—Charge upon Corpus.

   6. Where money has been advanced upon receivers' certificates for the preservation of the property, and no income is available, it will be charged upon the corpus.

Refaccion—Preservation.

   7. A refaccion contract is not one for the preservation of the property.

Refaccion—Marshaling.

   8. A refaccion contract carries a lien upon the cane, and not upon the corpus. Marshaling does not apply to it where the cane has been used up.

Master's Finding—Not Extended.

   9. Where a master upon a reference as to liens upon income finds that a claim has a lien, this does not justify the court, after the income is used, in charging the claim upon the corpus.

Trustee—Rank of Claims.

   10. Where the fund is in court there will be nothing gained in turning it over to the trustee to determine claims which will have to be settled by the court.

Fund in Court—Expenses.

   11. Provisional expenses will be provided for out of the fund without waiting for final distribution.

Unmortgaged Corpus—Distribution.

   12. Where certain personal property has been sold at the time of the foreclosure, it will be distributed as corpus not subject to the lien of the mortgage.

Special Master—Clerk.

   13. Where a cause has been long in the court and the clerk is familiar with it, while, on the other hand, there are few or no attorneys who have not been concerned in claims, a proper ground arises for the appointment of the clerk as special master under the equity rules.

Opinions filed August 6, 25, 1919.

_____

*Messrs. Alv. Nava & Dominquez* and *Ramon Siaca* **for** L. F. Iglesias.

*Mr. H. G. Molina* for mortgage trustee.

*Mr. C. Coll Cuchi* for petitioner Cabrera.

HAMILTON, Judge, delivered the following opinion August 6, 1919:

The argument has taken a wide range, and as the matters ought to be submitted on briefs it may be well to state some elementary principles which need not be discussed.

1. It is a principle well settled, although not without difficulty in its application, that a court of equity will not displace contract liens, such as mortgages, although the court will from the necessity of the case postpone the enforcement of such liens for the purposes of administration of the property in court by receivers, and will pay the expenses of administration and of preservation out of the earnings of the property so administered. The general principle is that a court of equity will take charge of the property, through receivers or otherwise, for the purpose of working out equitable rights between conflicting parties; but this administration is temporary, and is not designed to affect the corpus of the property. There is an extension of the rule in the case of public service corporations, like railroads, where receivers' certificates are given a preference in a proper case, even over the mortgage. Fosdick v. Schall, 99 U. S. 235, 25 L. ed. 339; Kneeland v. American Loan & T. Co. 136 U. S. 89, 34 L. ed. 379, 10 Sup. Ct. Rep. 950; International Trust Co. v. Decker Bros. 11 L.R.A.(N.S.) 152, 81 C. C. A. 302, 152 Fed. 78.

Receivership administration, like other branches of equity, was not fully understood in Porto Rico, and when announced in

Gregg Co. v. Utuado Sugar Co.

the Borinquen case was much criticized. Its true extent and advantages have since been appreciated, and I think it may be said to be a recognized part of the jurisprudence enforced in Porto Rico.

2. Under the Anglo-American system a court is considered in civil cases as a tribunal furnished by the state for the settlement of disputes between individuals. The continental view is that a court is a branch of the government and acts in rem, so to speak, declaring what is the law and the facts. This is the Spanish view, and it is not unnatural that it still survives to a considerable extent in Porto Rico. Under the American system, however, a court merely decides an issue which is brought before it by private parties, and makes no declaration of public rights or of matters which affect parties not before it. Of course it might happen that something of the sort may be said or done, but by way of offset to this it is the established doctrine that everything said affecting a person not a party to the suit is coram non judice and absolutely void so far as that person is concerned. Such a person may afterwards appear and call attention to such an erroneous declaration, and it will be held for naught so far as affects his rights. Due process of law, according to American institutions, requires that every man shall have his day in court, and the most solemn adjudication is void so far as it affects the rights of persons not before the court. There are certain exceptions where proceedings are in rem as in admiralty, but those are exceptions and are limited in scope.

3. This being so, it is not necessary for a trustee under a mortgage to intervene formally where his rights are not concerned. If a court of equity undertakes the administration of

Gregg Co. v. Utuado Sugar Co.

mortgaged property as above set out, the trustee is possibly postponed in the enforcement of his rights until the conclusion of the case, except so far as he cares to come in and obtain relief from the court itself. If this does not seem necessary, he may stay out of court without any fear of injury to his rights. The court will not knowingly in receivership cases make any orders that affect the corpus of the property without first giving notice to the trustee if he can be found. In the case at bar it does not so far appear that the court has undertaken to make any order which required the presence of the trustee until the sales lately had, and the trustee was then formally notified.

4. This principle that a suit is one between individuals, and is not the action of the government making a decree in rem, applies even in consent matters. It has been held by the Supreme Court that if parties consent to a decree it shall be entered and is binding upon them, but does not commit the court to any responsibility. Texas & P. R. Co. v. Southern P. Co. 137 U. S. 48, 34 L. ed. 614, 11 Sup. Ct. Rep. 10 ; Lawrence Mfg. Co. v. Janesville Cotton Mills, 138 U. S. 552, 34 L. ed. 1005, 11 Sup. Ct. Rep. 402. In other words the matter agreed to binds the parties and as a question of fact is settled as between them, but the court is not committed to any principle that might be implied.

This individualistic view of litigation applies even in reports made by a master or other subordinate officials of the court. If a matter has been referred to a master and he makes a report which is not excepted to by the parties in interest, confirmation follows as a matter of course, and the court is not committed to any declaration on principles implied, although the facts are thereby settled as between the parties. In practice it would be

impossible for the court, especially in the sugar receivership two or three years ago, to examine all details. Indeed reference to the matter is designed to avoid this difficulty. Like other consent decrees it is administrative, and does not bind the court as res judicata. These principles may be said to be derived from natural law, and are implied in the sacredness of property as well as of life and liberty recognized by the American Constitution.

HAMILTON, Judge, delivered the following opinion August 25, 1919:

The cause having been submitted for decree upon the law as presented in argument and by brief and upon the facts as shown by the records in this case, it now becomes necessary to dispose of the different claims in interest.

5. The cause as now presented has an additional party, the Banco Territorial y Agricola, the trustee under the mortgage of the Utuado Sugar Company, who has come in and formally claimed the proceeds of the sale of the mortgaged property. There being no note of evidence, there might be a technical difficulty as to what is to be considered by the court. This, however, is obviated by the consent of parties made in open court and by the condition of the case as presented. There seems no reason to change the views of the court as heretofore declared on the merits of each particular claim.

The question is as to the relative standing of these different claims as against the trustee under the mortgage. Even the

trustee makes no point as to the facts heretofore found and they will therefore not be reopened. Many of them were adjudicated over two terms ago, and have become the law of the case, if not the law of this jurisdiction. They bind the parties in question because not appealed from within the legal limit. What is to be determined, therefore, is solely the rank over against the trustee of these claims to which liens attach. They will be taken up seriatim.

6. The first to be mentioned is that of Iglesias. This claim has already taken up a great deal of the time and attention of the court, and its different points will be found discussed in 7 Porto Rico Fed. Rep. 219, 8 Porto Rico Fed. Rep. 220, 411, 524. The court sees no reason to change, even if it could, the conclusions heretofore arrived at, which relate to the advancement of Iglesias to receiver McFie of $2,774.88. The balance now remaining unpaid of this, to wit, $1,664.80, will, on account of there not being income on hand in this court, be charged upon the corpus of the property, and the decree will direct the payment of this balance to Iglesias.

7. A similar situation is claimed for Carlos Armstrong & Sons. Previous opinions of the court in regard to this claim will be found in 6 Porto Rico Fed. Rep. 518, 618. The argument is made that it is analogous to the claim of Iglesias, and should not only be prorated with Iglesias, but should prevail, upon the principle of marshaling, against the trustee.

It does not appear that it has been held by this court to be in the same class with Iglesias. It seems that the receiver used up cane on which Armstrong had a refaccion claim. This is

Gregg Co. v. Utuado Sugar Co.

not, however, money secured by the receiver for the preservation of the property, as was in the case of Iglesias.

Damages for injuries during the receivership are classed as part of the operating expenses of the administration. 24 Cyc. 354. Coal taken by receivers is an administration expense. United States & M. Trust Co. v. Beaty, 156 C. C. A. 242, 243 Fed. 544.

8. It is urged that the Armstrong loan was under a refaccion contract. 6 Porto Rico Fed. Rep. 618. This is given a preference by law (Civil Code, § 1824), and there is no doubt that on the sugar product of refaccion there would be a lien. Welch v. Central San Cristobal, 7 Porto Rico Fed. Rep. 720. But the sugar as well as the money product have long since been dissipated and are no longer in question. The loan amounted to a mortgage for some purposes, but not on the corpus of the property over against the trustee.

It is argued that the doctrine of marshaling should apply. This doctrine grows out of the maxim of equity that "he who seeks equity must do equity." Pom. Eq. Jur. §§ 385, 396, 1414. Thus, where a broker rehypothecates to a bank securities left in his hands by customers, the claims of all customers similarly situated will be prorated out of the securities not sold by the bank, no matter to whom those surplus securities originally belonged. Re, J. C. Wilson & Co. 252 Fed. 631.

The principle is that where one creditor has two funds upon which to draw and another creditor has recourse to but one of these, the first creditor will be restricted to the fund upon which he alone has a claim to the extent that it will reimburse him. In the case at bar it is difficult to see what are the two funds to

Gregg Co. v. Utuado Sugar Co.

which Iglesias could resort. Iglesias and Armstrong were injured in one calamity, the insolvency of the Utuado Sugar Company, but Iglesias has the advantage of a lien for preserving the property while Armstrong has no such lien. On the other hand, as between the trustee and Armstrong, the trustee has a resort to the corpus of the estate mortgaged, but to this corpus only. The trustee could not have obtained any part of the income, unless possibly for interest. Moreover the doctrine of marshaling applies where there are two funds available, and if there ever were two funds, at present there is but one fund; there can be no marshaling of something which does exist with something which does not exist. The doctrine has wide scope and comes under the equitable rule, that equality is equity, which is indeed the basis of equitable jurisdiction. Pom. Eq. Jur. 410. Marshaling has been applied as between equitable and legal assets, in the matter of specific legacies when used for administration, and in mortgages. Maitland, Equity, 201, 211, 212. It is doubtless true that it will be applied in all cases where it is equitable; but it does not seem applicable in the case at bar whether as between Armstrong and Iglesias or Iglesias and the trustee.

9. A motion is made by sundry parties that Carlos Cabrera be directed to repay into court the sum collected by him under orders of court, the argument being that this was improperly paid to him. The clerk under the same order made out checks to a number of claims having apparent priorities, but these were not paid and by subsequent order of court could not be collected. This amounted to the court's withholding the amounts for the time being until apparent conflicts could be determined. In the case of Cabrera there is no allegation of

Gregg Co. v. Utuado Sugar Co.

insolvency, or other danger of loss of the money in question, and moreover he has a claim to bonds which can be controlled by the court.

This, however, does not determine Cabrera's right to the money or his claim for $10,000 advanced the receiver. It seems that the claims rest upon receivers' certificates issued by receiver McFie, but a receiver's certificate cannot rise higher than its source. A certificate may be valid against the income to pass through the hands of a receiver, but is a charge upon the corpus of the property only in such cases as expenses for the preservation of the corpus itself as distinguished from the running of the business or general administration of the affairs of a corporation, according to the distinction already declared in the matter of Iglesias. The standing master was dealing with income and thought it sufficient to find that Cabrera held receiver's certificates; to charge them on the corpus now it would be necessary to determine whether these represented preservation expenses or not. Meantime it would seem that the payment to Cabrera was premature, and he will return the amount to the court within thirty days.

The same considerations as to priority apply to the receiver's certificate filed by McFie, and both claims should be determined by a reference on the facts.

10. The original intervention of the trustee for the bondholders was on the theory, and he made the request, that the fund in court be paid over to him for disposition. In other words, that under the mortgage the trustee should sell and divide the net proceeds among the holders of the bonds. It may be doubted whether this would prevail even if there had been foreclosure in a suit brought by the trustee himself. He has

Gregg Co. v. Utuado Sugar Co.

no interest, and the proceeding is not for his benefit. The beneficiaries are the bondholders, who might be a numerous and fluctuating class. In the case at bar the suit is brought and the sale had at the instance of creditors, and it is the duty of the court to divide the fund among the creditors according to their rank. If the money was turned over to the trustee, he would have to determine who are the bondholders, without the power to compel them to file their bonds, and yet with the duty to settle questions of hypothecation and other claims to individual bonds. He would likely have to seek the aid of the court. Nothing would be gained in point of time and practice in turning the money over to the trustee, and it had better be retained where it is now until all law points as to bonds are determined. In point of fact this seems to be the view of the trustee himself on the argument and in later applications filed in court.

11. There is no reason, however, why all the money should lie in court while the trustee is necessarily incurring expenses which must ultimately be met out of the fund. Application is made to the court for provisional payments on this account, and this will be referred to the special master.

12. There remains a fund of about $5,000 produced by sale of articles not subject to the mortgage, and which must be disposed of among those entitled to it. There being no claims lately presented, it is probable that all parties to whom this fund should be paid have already proved their claims. In order, however, that the details may be worked out with more care than will be possible by the judge under present circumstances of closing the court for the usual summer vacation, the proper disposition of this fund is also referred to the special master.

Gregg Co. v. Utuado Sugar Co.

It is clear that this fund is itself part of the corpus of the property and must be treated as such. Rules applicable under previous holdings of the standing master to priorities as against the income of the property in the hands of the receiver do not apply to the corpus of the property, whether it be the proceeds of land mortgaged as heretofore discussed, or whether it be this fund, which is the proceeds of personal and other property not included in the mortgage. This small corpus fund is to be handled in the same manner as the larger, except that the mortgage trustee has no claim upon it. In other words preservation expenses are to be taken out of this small fund pro rata with mortgage corpus fund before distribution among lienholders or other claimants. The corpus is the total of the two sums; to wit, $77,500. It is contended by Iglesias and others that this fund should be increased by reimbursement to it of amounts heretofore paid for taxes and otherwise, on the theory that these should be charged to the mortgaged property. This, however, is not true. If there should be any such sums repaid they would not constitute a part of the corpus of the property, but would constitute part of the income, and be subject to the rules heretofore declared by the standing master. No reason appears why there should be such reimbursements. Thus, taxes were a proper charge upon the income of the property, indeed in some respects the highest charge, as they represent the protection afforded by the government itself. There might be more doubt about interest paid to the trustee on the mortgage, but this has stood so long undisputed by any party to the suit that after the lapse of so many terms it does not appear necessary to open the question. If there should be any matters requiring special investigation which are not covered by the opinion, they can be

Gregg Co. v. Utuado Sugar Co.

brought up upon the special reference, which seems necessary.

13. These different matters require the appointment of a special master, and the court will name Antonio Aguayo, the clerk of this court, to that position and for the above purposes. The rules require that the reasons for the appointment of the clerk should be specified, and the clerk will therefore, in entering the order on the minutes, enter also the following reasons: This case has been in court for over six years and involves a great many papers and considerations with which the clerk is thoroughly familiar; on the other hand, there are very few lawyers of experience at this bar who have not handled claims or matters in the case in one way or another, and it would of course be impossible to appoint any such attorney as master. Moreover the parties in interest in open court have consented and indeed have urged the appointment, which the court already had in mind. It would seem that these circumstances would justify the appointment of the clerk, and an order will be entered accordingly referring the matters above set out, and all other matters or claims not herein disposed of, to such special master to hear and determine the same within forty days and file a report which shall lie open for exceptions for twenty days.

It is so ordered.