SOBRINOS DE EZQUIAGA, PETITIONERS, *v.* ROSSY, DISTRICT JUDGE, RESPONDENT.

PETITION for a Writ of *Certiorari* to the Special Judge of the District Court of San Juan, Section 1, in an Action of Debt and Appointment of Receiver.

No. 130.—Decided August 1, 1914.

CERTIORARI—RECEIVER'S CERTIFICATE.—An order made by a court authorizing a receiver appointed by said court to contract loans and issue receiver's certificates to take preference over an agricultural loan previously contracted, may be reviewed in *certiorari* proceedings.

RECEIVERS—RECEIVER'S CERTIFICATE—AGRICULTURAL LOAN—JURISDICTION.—In this case the District Court of San Juan, Section 1, had appointed receivers to take charge of the property of the corporation Central Vannina, and the receivers having petitioned the court for leave to contract a loan of $12,000 for the purposes of weeding the cane fields, purchasing fertilizer, advancing money to growers of cane contracted for, attending to the crop, making certain payments for cane received and meeting certain urgent obligations, the court, notwithstanding the express objection of the agricultural loan creditor, the payment of whose credit would be deferred by the adoption of such a measure, authorized the contracting of said loan and ordered the issue of receiver's certificates payable not later than March 31, 1915, in preference to any other credit. *Held:* That in view of the express objection of the agricultural loan creditor and the provisions of sections 4, 8 and 9 of the Act of March 10, 1910, relative to contracts for agricultural loans, and sections 1824 and 1825 of the Civil Code, the lower court exceeded its jurisdiction in granting the said authorization.

The facts are stated in the opinion.
*Mr. Eduardo Acuña* for the petitioners.

*Hon. Jesús M. Rossy* appeared *pro se.*

*Messrs. Alvarez Nava & Domínguez* for the receivers.

Mr. Justice del Toro delivered the opinion of the court.

This is a petition by the firm of Sobrinos de Ezquiaga for a writ of *certiorari* directed to Jesús M. Rossy, Special Judge of the District Court of San Juan, Section 1, for the purpose of reviewing the proceedings in the action brought by Successors of Abarca, Limited, against Central Vannina for the recovery of a debt and appointment of a receiver, which action is pending in the District Court of San Juan, Section 1.

The petition having been filed, before issuing the writ this court set July 29 for a hearing on the petition so that the interested parties might argue fully as to whether or not the question involved in the controversy could be considered in the extraordinary proceeding of *certiorari.* On that day the petitioners and the receivers appointed in the action brought by Successors of Abarca, Limited, against Central Vannina appeared through their attorneys. After hearing the argument the court decided to issue the writ and set the following day, July 30, 1914, for a hearing on the writ, when the petitioners and the receivers again appeared through their respective attorneys and Judge Rossy, the respondent, appeared in person. After a full discussion the case was submitted for our consideration and decision.

From the original record of the said action of Successors of Abarca, Limited, which we have before us, the following is shown:

The District Court of San Juan, Section 1, made an order on May 4, 1914, appointing Abelardo de la Haba and Rud Myohl receivers of the real and personal property of Central Vannina, Incorporated, authorizing them "to continue the operation of the factory of the defendant corporation and to manage and direct the said factory and any other enterprise or business in which the said corporation may be engaged by virtue of leases, contracts, obligations, or other-

wise, as they have been directed and managed heretofore in the interest and for the benefit of the said Central Vannina, and in such capacity to keep the said property in good condition in order that it may be safely and advantageously used; to protect the said property and to employ the person or persons necessary for the attainment of the ends indicated, and to make such payments and disbursements as may be proper." The receivers appointed executed the required bond, made oath, took possession of the real and personal property of the defendant corporation, and entered upon the full discharge of their duties.

After performing other acts not necessary to recite for the consideration of this case, the receivers filed a petition in the district court on July 13, 1914, for leave to borrow money on receiver's certificates, alleging and praying as follows:

"1. That your receivers have made a careful and detailed examination of the state and condition of all the plantations of the Central Vannina, consulting the field overseer of the said factory for that purpose, and find that both the central's own growing crops of sugar cane and those contracted for with other planters are now in a state of complete abandonment and show well-defined signs of deterioration and future shrinkage in their product.

"2. That your receivers are absolutely convinced that unless immediate steps are taken to cultivate and improve the said plantations, the next crop of 1915 will be a complete failure and result in the loss of nearly all of the crop anticipated at this time.

"3. That the said cane plantations constitute the only assets and security of the different creditors of the said corporation, including principally its financing creditors and others more or less privileged and excluding only its mortgage creditors, so that if the complete ruin of the same is allowed through failure to take proper and immediate action, your receivers will have no means wherewith to pay not even the smallest percentage of the obligations outstanding against the said corporation and at the same time all of the property belonging to it would soon be put under execution.

"4. That although, as stated, the said plantations are the only source of income of the said corporation, your receivers have been

compelled at the most critical moment to suspend all kinds of cultivation and improvement of the same on account of lack of funds for the corresponding expenses, as the different banks to which your receivers have applied for loans for that purpose have refused the same on any other conditions than under the guaranty of this court by means of receiver's certificates authorized by it with preference over the other outstanding obligations of the said central and to be paid from the proceeds of the first manufactured products of the next grinding of 1915.

"5. That the amount necessary at this time for such purposes, pending a later determination of the total amount necessary, is $12,000, to be used exclusively in meeting urgent obligations and attending to the work of cultivation.

"Therefore, your receivers pray the court to make an order authorizing them, subject to such conditions as it may deem proper, to negotiate a preliminary loan of $12,000 with interest at 9 per cent per annum, to be secured by receiver's certificates and to constitute a preferred and special lien on the first receipts of the corporation and the manufactured products of the next crop of 1915, and that the same be considered as a privileged credit for the purposes hereinbefore stated."

On July 14, 1914, a hearing was had on the petition of the receivers, at which appeared their attorney and the attorney for the firm of Sobrinos de Ezquiaga, the owners of a financing credit whose preferred character would be affected if the petition of the receivers should be sustained. The said financing creditors opposed the petition in writing as follows:

"That they most energetically oppose the petition of the receivers as set out in their motion of the 13th instant for the purpose of obtaining the authorization of the court to contract a preliminary loan of $12,000 with interest at 9 per cent secured by receiver's certificates, which would constitute a preferential and special lien on the first receipts of the corporation and on the manufactured products of the next crop of 1915, your petitioners basing their opposition on the following grounds:

"I. Because the issuance of the receiver's certificates solicited as a preferential and special lien on the manufactured products of the next crop of 1915 counteracts, opposes and renders absolutely ineffective the preference heretofore given to the credit of your peti-

tioners which originated in the contract for an agricultural loan entered into in a deed of August 25, 1913, executed before Notary Julio César González, which contract is binding upon the present receivers inasmuch as it was recognized, accepted and partially complied with by them. A copy of the same is annexed hereto and made a part hereof.

"II. Because the said preference sought to be given to the said receiver's certificates is also in opposition to and inconsistent with the preference which section 4 of the Act of March 10, 1910, confers upon agricultural loans recorded in the registry of agricultural contracts, as is that of your petitioners, and the preference given to this kind of credits by sections 1824 and 1825 of the Civil Code as amended by the said Act of 1910, and for that reason the receiver's certificates, if issued with such preference, being subsequent to the contract of your petitioners, could not be recorded in the said registry of agricultural contracts while the record of the credit of your petitioners is in force, as it is at present.

"III. Because the petition of the receivers for the issuance of the receiver's certificates only states as the object or purpose of the funds to be raised by the said certificates, the payment of urgent obligations and expenses of cultivation, and such vagueness and indefiniteness regarding the use to which the funds so raised will be put is contrary to the jurisprudence governing such cases, a detailed statement of the sum needed and of the purposes to which it is to be applied being required. 34 Cyc., 301; *Meyer* v. *Johnston,* 53 Ala., 237.

"IV. Because only in cases of a receivership of a railroad company and because of its quasi-public character are the courts authorized and empowered to issue receiver's certificates to constitute a lien preferred to any other prior lien without the consent of the first creditor. 34 Cyc., 298. And as in the case at bar the Central Vannina is not a corporation of a quasi-public character, the court lacks jurisdiction and authority to order the issuance of preferred certificates in the manner prayed for by the receivers.

"V. Because jurisprudence also sustains the doctrine that in cases like the one in controversy the interests of the corporation and of the preferred creditors are duly harmonized by the issuance of certificates without prejudice to the preferred credits of persons who do not consent to such issuance. *Rutherford* v. *Pennsylvania Midland Ry. Co.,* 178 Pa., 38.

"For the foregoing reasons your petitioners oppose the issuance of the receiver's certificates as petitioned, and pray the court to dismiss the said petition of the receivers."

On July 22, 1914, the district court decided the issue and made the following order:

"*Whereas,* Rud Myohl and Abelardo de la Haba, receivers appointed by this court in the above-entitled case, have filed in the office of the secretary of this court a motion praying for authority to contract a loan of $12,000 by the issuance of receiver's certificates, the said sum being urgently needed for the cultivation of the crops, the payment of canes already delivered to the central and of wages of laborers and office employees, all being necessary for the continuance of the business of the said corporation, which motion was argued in chambers on the 14th instant and opposed by the financing creditors, Sobrinos de Ezquiaga, represented by Attorney Eduardo Acuña, who alleged that they could not agree to the payment of any credit with preference to their own.

"*Whereas,* From the statements of said receivers after an inspection made by them it appears that the plantations are in a lamentable condition of abandonment due to a lack of funds in their possession to care for the same and keep them in a good state of cultivation.

"*Whereas,* These statements of the receivers have been corroborated in part by a personal inspection made by the judge who signs this order, he having seen some of these plantations and become convinced that if the canes do not receive immediate attention they will produce no profit at the beginning of the next grinding.

*Whereas,* There exists at present a financing contract entered into by the Central Vannina and Sobrinos de Ezquiaga for a large sum of money as the balance of previous financing operations, which credit is solely and exclusively secured by the product of said cane plantations, and it is absolutely clear that unless proper and speedy attention is given to their cultivation the crops will be a total loss and, consequently, the security for the said credit will disappear, with manifest prejudice to the interests of said financing creditors.

"*Whereas,* It appears from the itemized statement of expenses which the receivers have filed in this court that the said sum of $12,000 is the amount strictly needed at this time for the purpose of attending to the urgent necessities specified in the said statement filed in this court by the receivers.

"*Whereas,* The said receivers and even the judge of this court have made all necessary efforts to secure by other means than those adopted

sufficient funds for the purposes outlined, which efforts have been without avail because both the banks and the financing creditors themselves have refused to advance the necessary funds to the receivers to meet these peremptory necessities.

"*Whereas,* This court, in cases of this kind, has ample discretionary power to adopt such extraordinary measures as may be necessary and available for the protection and preservation of all properties in the hands of its receivers in order to secure a practical and advantageous result not only for the litigants, but also for all persons whose interest in the successful outcome of the receivership may be clearly shown.

"*Whereas,* In adopting this measure the court has no intention of prejudicing or displacing any credit which any person may have against the Central Vannina, and much less the credit of the financing creditor whose preference we do not wish to disregard; but, on the contrary, it is the sincere purpose of the court to attend properly to the cultivation of the existing cane plantations which are in a ruinous condition on account of the lack of sufficient funds to pay for their cultivating and care, the crops from which when later converted into sugar constitute the only source of income on which the central depends for the payment of its many obligations, not consisting solely in the financing credit.

"*Therefore,* The court authorizes the issuance of receiver's certificates for the amount of $12,000 and orders that said certificates be authenticated by the official signatures of Rud Myohl and Abelardo de la Haba as such judicial receivers appointed by this court, to be six in number for $2,000 each and payable to bearer. The said certificates shall be paid in preference to any other credit on March 31, 1915, or on any other previous date on which the receivers appointed by this court have sufficient funds to pay them, and it is further ordered that the said sum of $12,000 when obtained by the receivers shall be disbursed as follows:

"(*a*) Cleaning and weeding 1,000 *cuerdas* of cane, more or less, for the crop of 1915, which estimated at $4 per *cuerda* makes a total of_____ $4,000

"(*b*) Purchase of fertilizer and spreading it on the central's own plantation_____ 2,700

"(*c*) Advances to contracting landowners whose canes, for want of funds, are in a bad state of neglect, it being understood that the amount advanced to each shall not exceed $2.50 per *cuerda* up to a total of 1,200 approximately _____ 3,000

"(*d*) Payment of balances still due to the following contracting landowners for canes delivered to the Central Vannina during the duration of the receivership:

"Saturnino Fernández_____ $93
"José Solís Amy_____ 16
"José Fuentes Gómez_____ 124
"Delfín Catalá_____ 2
"Juan Elías Cruz _____.._____.._____ 8
"Cristino Bravo_____ 6
"Domingo Fuentes García_____ 7
"Juan Gotay _____ 105
"Luciano Cruz_____ 2
"Gregorio Santana _____ 2
"Justina Morales de León_____ 9
"Gonzalo Díaz _-_____ 1
"Marcelino Salazar_____ 20
"Ramón Acosta López_____ 5
"Jacinto Alamo_____ 1
"Teodoro Amador_____ 14
"Concepción Marín_____ 10
"Francisco Chiclana_____ 8
"Hernáiz & Muriel _____:._____ 48
                                                           ————
                                                                500
"(*e*) Payment of very urgent accounts such as hire of farm laborers for the work of cultivation, fees for recording certain grinding contracts lacking this legal requisite, salaries of experts whose services have been and should be employed later for the appraisement of canes contracted for whose owners are in disagreement with the central__  1, 800
                                                           ————
"Total _____ $12, 000"

Two days later, or on July 24, 1914, the firm of Sobrinos de Ezquiaga applied to this court for the writ of *certiorari* to which we have referred, and prayed the court to review the proceedings of the District Court of San Juan in the said case of Abarca, and to set aside the order of July 22, 1914, above transcribed, on the following grounds:

"A. Because as the Central Vannina is a private corporation and not one of a public or quasi-public character the court exceeded its

jurisdiction in authorizing the issue of receiver's certificates to be paid for out of the first funds collected by the receiver's from the next grinding with preference to the credit of the petitioners, which credit, being a financial loan, has, as to the products of the property financed, a special and specific preference recognized by law over all subsequent credits of whatever nature until it is paid in full.

"B. Because the court exceeded its jurisdiction in authorizing the issuance of said certificates in the manner and of the character mentioned, notwithstanding the opposition of the petitioners and without safeguarding in any way or manner their privileged interests.

"C. Because the court likewise exceeded its jurisdiction in ordering that the greater part of the funds to be raised by means of the said specially privileged and preferred certificates be particularly employed in the purchase of fertilizer, in advances to owners of canes contracted for and in the payment of balances due on contracts for canes from the former grinding, thereby giving to said accounts a marked and effective priority over the credit of the petitioners, notwithstanding the fact that the sole and basic reasons for the issuance of said certificates is the preservation and cultivation of the cane plantations.

"D. Because the order of the court is incompatible with its own purposes in that while the court recognizes the preference and priority of the credit of the petitioners and states that it has no intention to prejudice or defer the payment of said credit, it actually defers and prejudices the same by giving to the certificates such preferred character over all other credits.

"E. Because the proceeding following in regard to said certificates is void, according to section 4 of the Civil Code, for it openly infringes sections 1824 and 1825 of the said code and sections 4, 8, and 9 of the Act to provide for contracts of advances for agricultural purposes, approved March 10, 1910."

On the foregoing statement of the case we will consider and decide the question at issue.

It has been shown conclusively that the Central Vannina is a private corporation organized under the laws of Porto Rico; that it is at present being managed by two receivers appointed by a court for the purpose of continuing the operation of its sugar factory and of keeping its property in good condition so that it may be employed safely and advantageously; that the receivers appointed, after alleging the

unsatisfactory condition of the planted canes of the central and of the landowners contracted with, the want of funds and the loss of the crop unless proper attention be given promptly to the growing crops, prayed the court to authorize them to issue receiver's certificates to the value of $12,000, the amount immediately required by them, said certificates to be paid with preference over all other credits from the first receipts of the corporation and the sugar to be manufactured during the next crop of 1915; that the petition was heard and decided after the intervention of the only preferred creditors whose credit would be displaced in case the petition of the receivers should be granted, and that notwithstanding the opposition of the said preferred creditors, the district court ordered that the certificates be issued.

One of the clauses of the contract entered into between the creditors who opposed the petition of the receivers and the Central Vannina, which contract appears properly recorded in the record of agricultural contracts of the Registry of Property of San Juan under date of October 1, 1913, reads as follows:

"*First.* The Central Vannina corporation, represented by its president, Antonio Caubet y Pons, with authority from the board of directors, in its capacity as owner and lessee of the properties described, creates a lien on the products or yields of the said properties which may be obtained from the canes under cultivation, as well as from the canes belonging to the said corporation, by virtue of contracts entered into with other landowners, in favor of Sobrinos de Ezquiaga, the said products to respond for the payment of the financing agricultural loan of $200,000, as set out in this contract."

The statutes under which the said contract was entered into and which are in force at present, are the following:

Section 4 of Act No. 37 of 1910, to provide for contracts of advances for agricultural purposes and grinding of cane, and for other purposes, which reads:

"Section 4. The indebtedness of advances for agricultural purposes, from the date of the filing thereof in the Registry hereinafter

provided for, shall have preference over all other subsequent indebtedness of whatever nature, as to the crops raised on the property for which the advances are made, during the term of the contract, and always until the creditor shall have been fully paid for the total sum of his advances, except indebtedness for taxes in favor of The People of Porto Rico as provided by law.

"Where the creditor has not been fully paid for the amount of his credit during the term of the contract, it shall be the duty of such creditor to enter into a contract for the extension of such term with the debtor, or bring suit as provided in section 9 hereof, within six months after the expiration of the contract."

And sections 1824 and 1825 of the Revised Civil Code, as amended in 1910 (Acts of 1910, pp. 124, 125), which provide as follows:

"Section 1824.—With regard to certain real property and rights on realty of the debtor, the following shall have preference:

"1. Indebtedness due to The People of Porto Rico or to the corresponding municipality with regard to the property of the taxpayers for the amounts of the last three annual assessments and the current annual assessment, unpaid, of the taxes which burden the same.

"2. Indebtedness due on advances for agricultural purposes, as to the crops on the property for which such advances are made, as provided in the special act relative to that subject.

"3. Indebtedness due to insurers, with regard to the property insured, for the insurance premiums for two years, and should the insurance be mutual, for the last two dividends declared.

"4. Mortgage and agricultural indebtedness (refaccionarios) entered and recorded in the Registry of Property, with regard to the property mortgaged, or which had been the object of the agricultural loan (refacción).

"5. Indebtedness, of which a cautionary notice has been made in the Registry of Property by virtue of a judicial mandate, by reason of attachments, sequestrations, or execution of judgments, with regard to the property entered therein and only with regard to subsequent indebtedness.

"6. Agricultural loans not entered or recorded with regard to the real estate to which the agricultural loan (refacción) relates, and only with regard to other indebtedness from that mentioned in the four preceding numbers.

"Section 1825.—With regard to all other personal and real property of the debtor, preference shall be given to:

"1. Indebtedness due to The People of Porto Rico and to the corresponding municipality for the taxes of the last three annual assessments due and the current unpaid annual assessment which are not covered by paragraph 1 of section 1824.

"2. Indebtedness due on advances for agricultural purposes, as to the crops on the property for which such advances are made, as provided in the special act relative to that subject:

"3. Those due:

"(a) For judicial expenses and those of administration of bankruptcy for the common interest of the creditors, with the proper authorization or approval.

"(b) For the funeral expenses of the debtor, according to the customs of the place, and also those of his wife and of his children, under their parental authority, should they have no property of their own.

"(c) For expenses of the last illness of said persons, incurred during the last year, counted up to the day of their death.

"(d) For daily wages and salaries of employees and domestic servants for the last year.

"(e) For advances made to the debtor for his family and himself, contracted under his authority, in provisions, clothing, or shoes, for the same period of time.

"(f) For income for support during proceedings in bankruptcy, unless they are based on mere beneficence.

"4. Indebtedness which without a special privilege appear:

"(a) In a public instrument.

"(b) In a final judgment, should they have been the object of litigation.

"This indebtedness shall have preference among themselves according to the priority of dates of the instruments and of the judgments."

Therefore, the questions raised and to be decided are as follows:

Can a court change the terms of a contract voluntarily and validly entered into according to the statutes? Does the power which the courts have to appoint receivers in certain and particular cases carry with it the power to assume absolute control of the property placed in the possession of

the receivers in such a manner that they may change the order of priority of the liens previously created upon the property by its owners?

We have looked carefully into the law and it makes no provision on this point. We have considered jurisprudence likewise and do not find that such power has been exercised in cases similar to the one submitted for our decision.

What security can a statute which clearly and conclusively insures the payment of a credit in a certain order of priority offer to the citizens of a country if a court, at its discretion, may afterwards change the contract in such manner as to make the security contracted for entirely illusory?

To recognize such power in the judiciary in the absence of a prior and clear statutory provision would be to go against the fundamental principles upon which our system of government is founded.

When a difficult situation arises in the business operations of a corporation and the interested parties are confident that such situation is transitory and can be overcome by a supreme effort, the interested parties themselves generally, on their own initiative, defer their rights in the hope of seeing them assume their full value in the future. This is why many cases occur in which recourse is had to the issuance of preferred receiver's certificates by judicial authority for the purpose of obtaining certain sums of money whose payment is specially guaranteed in order to confront the difficulties. But recourse has not been had, nor do we understand that it will be had, to such a measure when the interested parties themselves oppose it.

In the present case the only creditor whose preferred credit would be displaced has opposed the petition of the receivers. Both the receivers in their petition and the court in its order referred to the fact that the measure solicited and adopted tends to protect especially the financing creditor. Nevertheless, the said creditor has objected expressly to such protection and it seems to us that he is in a better

position than anyone else to apply for or to adopt measures to protect his own interest.

In the course of his argument at the hearing before this court counsel for the financing creditor stated that, according to the contract, his client was entitled to recover his credit by collecting $3 for each sack of sugar made by the central and that he had gone so far as to offer to the receivers to reduce his guaranty to collecting $1 for each sack of sugar instead of $3, and that his offer had not been accepted by the receivers. Therefore, the hope of the receivers was to defer absolutely the preferred credit of the financing creditor, and when the district court converted this hope into a reality by its order of July 22 last, against the express opposition of the creditor, it exceeded its authority and therefore performed an act which is entirely void.

There is an abundance of American jurisprudence on the subject and it establishes a well-defined distinction between the powers of a court when it intervenes in the administration of a quasi-public corporation and when it manages the business of a private corporation through receivers.

In the case of *Hooper* v. *Central Trust Co. of New York*, 29 L. R. A., 262, 263, the Court of Appeals of Maryland reached the following conclusion:

"Vested liens upon the property of individuals and private corporations cannot be displaced by means of receiver's certificates."

In the case of *Merriam* v. *Victory Min. Co. et al.*, 60 Pac., 997, the Supreme Court of Oregon held as follows:

"The right of the court appointing a receiver for a corporation to give priority of payment to unsecured debts over the lien of first mortgage bonds is restricted to creditors of railroads, which are public concerns, and cannot be exercised to give unsecured creditors of an ordinary corporation such preference over contract liens."

In the case of *Farmers' Loan & Trust Co.* v. *Grape Creek Coal Co.*, 50 Fed., 481, 483, a petition was filed in the Circuit

Court of the Southern District of Illinois by the receiver for an order authorizing him to issue receiver's certificates which should be a first lien on the property of a certain corporation. The certificates to be issued were not to exceed $24,000, to enable him to pay taxes due amounting to $3,428.64, take up outstanding certificates amounting to $6,400, and the remainder to continue the operation of the mines of the corporation. The holders of 75 per cent of the bonds joined in the receiver's petition and the holders of the remaining 25 per cent resisted it. The circuit court considered the petition fully, cited the jurisprudence applicable thereto and refused the authority requested in the following terms:

"Extensive as are the powers of courts of equity, they do not authorize a chancellor to thus impair the force of solemn obligations and destroy vested rights. Instead of displacing mortgages and other liens upon the property of private corporations and natural persons, it is the duty of courts to uphold and enforce them against all subsequent incumbrances. It would be dangerous to extend the power which has been recently exercised over railroad mortgages, (sometimes with unwarranted freedom,) on account of their peculiar nature, to all mortgages. The power does not exist, and the application is denied."

In referring to the fact that in cases of railroad corporations the issue of preferred receiver's certificates has been authorized, Mr. Justice Gresham, in the same case, expressed himself as follows:

"In the exercise of this exceptional and extraordinary jurisdiction, which is of comparatively recent origin, courts have entered orders making receiver's certificates first liens on the mortgaged property. This has been done, however, on grounds not applicable to mortgages executed by private corporations. A railroad corporation is a *quasi* public institution, charged with the duty of operating its roads as a public highway. If the company becomes embarrassed and unable to perform that duty, the courts pending proceedings for the sale of the road will operate it by a receiver, and make the expense incident thereto a first lien. This is done on account of the peculiar character of the property. It is generally mortgaged to secure bonds, and per-

sons who invest in such securities know that the mortgage rests upon property previously impressed with a public duty. Private corporations owe no duty to the public, and their continued operation is not a matter of public concern. It is only against railroad mortgages that the Supreme Court of the United States has sustained orders giving priority to receiver's certificates representing particular indebtedness, and, as already stated, then only on principles having no application to a mortgage executed by a private corporation owing no duty to the public. *Fosdick* v. *Schall,* 99 U. S., 235; *Barton* v. *Barbour,* 104 U. S., 126; *Miltenberger* v. *Railroad Co.,* 106 U. S., 286, 1 Sup. Ct. Rep., 140; *Union Trust Co.* v. *Railroad Co.,* 117 U. S., 434, 6 Sup. Ct. Rep., 809; *Wood* v. *Trust Co.,* 128 U. S., 421, 9 Sup. Ct. Rep., 131; *Kneeland* v. *Trust Co.,* 136 U. S., 89, 10 Sup. Ct. Rep., 950; *Morgan's etc., Co.* v. *Texas Cent. Ry. Co.,* 137 U. S., 171, 11 Sup. Ct. Rep., 61.''

In the case of *Rutherford* v. *Pennsylvania Midland R. Co. et al.,* 35 Atl. Rep., 926, although this was a case of a railroad and the issuance of receiver's certificates was applied for by the holders of 491 out of a total issue of 510 bonds, and the order was made ''without prejudice to the rights of the non-consenting bondholders, and with leave hereafter to petition to have their bonds, like those of the consenting bondholders, held subject to the prior lien of the receiver's certificates,'' the Supreme Court of Pennsylvania, in reviewing the proceedings, said:

''Our first impression was that the learned judge had gone too far in authorizing the issuance of receiver's certificates for the completion of an unfinished railroad; that to do so would be establishing a dangerous precedent, etc. Ordinarily this would undoubtedly be so, and we would not hesitate to express our disapprobation of such proceedings; but, upon fuller consideration of the special and somewhat peculiar facts and circumstances of this case, we are not prepared to say that he was so clearly in error that the proceedings should be reversed. We are rather inclined to think that to sustain the contentions of the appellants would be prejudicial to all parties concerned. In matters that rest so largely in the sound discretion of the trial court as do cases of this kind, we should not interfere unless there appears to have been manifest abuse of that discretion.''

Also in the case of a railroad company, the Supreme
Court of the United States proceeds cautiously and fully to
inquire into the fact as to whether the parties concerned ex-
pressly or impliedly agreed to the order authorizing the issu-
ance of the certificates. We refer to the case of *Wallace* v.
*Loomis*, 97 U. S., 162, in which the court said:

"The receivers were authorized by the order appointing them,
amongst other things, to put the road in repair and operate the same,
and to procure such rolling-stock as might be necessary; and, for
these purposes, to raise money by loan to an amount named in the
order, and issue their certificates of indebtedness therefor; and the
order declared that such loan should be a first lien on the property,
payable before the first-mortgage bonds. The power of a court of
equity to appoint managing receivers of such property as a railroad,
when taken under its charge as a trust fund for the payment of
incumbrances, and to authorize such receivers to raise money neces-
sary for the preservation and management of the property, and make
the same chargeable as a lien thereon for its repayment, cannot, at
this day, be seriously disputed. It is a part of that jurisdiction,
always exercised by the court, by which it is its duty to protect and
preserve the trust funds in its hands. It is, undoubtedly, a power
to be exercised with great caution; and, if possible, with the consent
or acquiescence of the parties interested in the fund. In the present
case, it appears that the parties most materially interested either
expressly consented to the order, or offered no objection to it. The
appellant complains that it was made without notice to the second-
mortgage bondholders. But this cannot properly be alleged, inas-
much as the trustees of the second mortgage were parties to the suit,
and had due notice of the application, and made no objection to its
being granted. The bondholders were represented by their trustees,
and must be regarded as bound by their acts, at least so far as con-
cerns the power of the court to act, in making the order, and so far
as the interest of third persons acting upon the faith of it might be
affected. The appellant did not seek to be made a party to the suit
until several months after the order was made; and, when he became
a party and filed his answer and cross-bill, he prayed that the court
would continue to hold the property by its receivers, and would con-
tinue to direct and control them in the administration thereof, without
suggesting the slightest objection to the terms of the order by which
the existing receivers have been appointed."

And, finally, the Supreme Court of the United States, observing that the doctrine applied in cases of railroads was being too widely extended and that courts were exercising powers which did not rightly belong to them, in the case of *Kneeland* v. *American Loan Co.,* 136 U. S., 89, 97, expressed itself through Mr. Justice Brewer as follows:

"Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims. It has been assumed that a court appointing a receiver could rightfully burden the mortgaged property for the payment of any unsecured indebtedness. Indeed, we are advised that some courts have made the appointment of a receiver conditional upon the payment of all unsecured indebtedness in preference to the mortgage liens sought to be enforced. Can anything be conceived which more thoroughly destroys the sacredness of contract obligations? One holding a mortgage debt upon a railroad has the same right to demand and expect of the court respect for his vested and contracted priority as the holder of a mortgage on a farm or lot. So, when a court appoints a receiver of railroad property, it has no right to make that receivership conditional on the payment of other than those few unsecured claims which, by the rulings of this court, have been declared to have an equitable priority. No one is bound to sell to a railroad company or to work for it, and whoever has dealings with a company whose property is mortgaged must be assumed to have dealt with it on the faith of its personal responsibility, and not in expectation of subsequently displacing the priority of the mortgage liens. It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea, that the chancellor, in the exercise of his equitable powers, has unlimited discretion in this matter of the displacement of vested liens."

In view of all the foregoing and in the exercise of the jurisdiction conferred upon this court by the act authorizing writs of *certiorari* of March 10, 1904 (Acts of 1904, p. 132),

the order of the District Court of San Juan, Section 1, of July 22, 1914, authorizing the issuance of receiver's certificates having preference over previously secured credits, in Case No. 7,376, Successors of Abarca, Limited, against Central Vannina, for the recovery of money and appointment of a receiver, is set aside.

*Petition granted and order of lower court set aside.*

Chief Justice Hernández and Justices Wolf, Aldrey and Hutchison concurred.