SOBRINOS DE EZQUIAGA, PETICIONARIOS, *v.* ROSSY, JUEZ DE DISTRITO, DEMANDADO.

SOLICITUD para que se expida mandamiento de *certiorari* al Juez Especial de la Corte de Distrito de San Juan, Sección 1ª., en un caso sobre cobro de dinero y nombramiento de síndico.

No. 130.—Resuelto en agosto 1, 1914.

CERTIORARI—CERTIFICADOS DE SÍNDICO—REVISIÓN DE ORDEN AUTORIZANDO SU EMISIÓN CON PREFERENCIA A UN CRÉDITO REFACCIONARIO EXISTENTE.—Por medio del recurso de *certiorari* puede revisarse una orden dictada por una corte autorizando a un síndico nombrado por dicha corte para que contraiga préstamos y emita certificados de síndico con preferencia a un crédito refaccionario contraído anteriormente.

Síndicos—Certificados de Síndicos—Crédito Refaccionario—Jurisdicción de
     las Cortes de Distrito—Orden Autorizando a un Síndico para Contratar
     Préstamos y Emitir Certificados, Dándole Preferencia Sobre un Crédito
     Refaccionario Contraído Anteriormente.—En, este caso la Corte de Dis-
     trito de San Juan, Sección 1ª., había nombrado síndicos que se hicieran cargo
     de los bienes de la corporación Central Vannina, y habiendo pedido los sín-
     dicos para contratar un préstamo de $12,000 con el fin de desyerbar las plan-
     taciones de caña, comprar abono, anticipar dinero a los colonos, atender a
     las plantaciones, pagar ciertas cantidades adeudadas por cañas entregadas y
     hacer frente a ciertas atenciones urgentísimas, la corte, no obstante la expresa
     oposición del acreedor refaccionario cuyo crédito quedaría postergado con la
     adopción de tal medida, autorizó la contratación de dicho préstamo y facultó
     la emisión de certificados de síndico pagaderos a más tardar el día 31 de
     marzo de 1915 con preferencia a cualquier otro crédito. *Se resolvió,* vista
     la expresa oposición del acreedor refaccionario y lo dispuesto en las secciones
     4, 8 y 9 de la Ley sobre Contratos de Refacción Agrícola, de marzo 10, 1910,
     y los artículos 1824 y 1825 del Código Civil, que la corte inferior se extra-
     limitó en su jurisdicción al conceder la autorización indicada.

Los hechos están expresados en la opinión.

Abogado de los peticionarios: *Sr. Eduardo Acuña.*

El Hon. Jesús M. Rossy compareció personalmente.

Abogados de los síndicos: *Sres. Alvarez Nava & Domín-*
*guez.*

El Juez Asociado Sr. del Toro, emitió la opinión del tri-
bunal.

El presente es un recurso de *certiorari* interpuesto por la
mercantil Sobrinos de Ezquiaga contra el Hon. Jesús M.
Rossy, Juez Especial de la Corte de Distrito de San Juan,
sección 1ª., con objeto de revisar los procedimientos seguidos
en el caso de *Sucesores de Abarca S. en C.* v. *Central Vannina,*
sobre cobro de dólares y nombramiento de síndico, pendiente
en la dicha Corte de Distrito de San Juan, Sección 1ª.

Presentada la solicitud, esta Corte Suprema, antes de ex-
pedir el auto, fijó la audiencia del 29 de julio último a fin de
que las partes interesadas informaran con la amplitud debida
sobre si la cuestión envuelta en el asunto podía o nó decidirse
dentro del procedimiento extraordinario de *certiorari.* En
el día señalado comparecieron el peticionario y los síndicos
nombrados en el dicho caso de *Sucesores de Abarca S. en C.*
v. *Central Vannina,* por medio de sus abogados. Terminados
los informes, la corte resolvió expedir el auto y señalar la

vista para el día siguiente 30 de julio de 1914, en cuya fecha volvieron a comparecer los peticionarios por su abogado, los síndicos por el suyo y además el juez demandado Sr. Rossy en persona. Todos informaron ampliamente y el caso quedó sometido a nuestra consideración y resolución.

De los autos originales en el repetido pleito de *Sucesores de Abarca S. en C.* v. *Central Vannina,* que tenemos a la vista, resulta lo que sigue:

La Corte de Distrito de San Juan, Sección 1ª., el 4 de mayo de 1914 dictó una orden nombrando a Abelardo de la Haba y a Rud Myohl, síndicos de la propiedad real y personal de la Central Vannina, Inc., autorizándolos ''para continuar la explotación de la factoría de la corporación demandada y para que administren y rijan dicha factoría y cualquiera otra empresa o negocio a que dicha corporación esté dedicada por virtud de arrendamientos, contratos, compromisos o en cualquier otra forma, como hasta la fecha hayan sido regidos y administrados en beneficio e interés de la citada Central Vannina; y en tal sentido conserven dicha propiedad en buena condición y estado de modo que sea segura y beneficiosamente usada; pretejan la referida propiedad y empleen la persona o personas necesarias a la consecución de los fines indicados y verifiquen los pagos y desembolsos que fueren procedentes.'' Los síndicos nombrados otorgaron la fianza exigida, prestaron juramento, tomaron posesión de la propiedad real y personal de la corporación azucarera demandada, y entraron de lleno en el ejercicio de sus funciones.

Después de realizados otros actos que no hace al caso investigar, los síndicos, el 13 de julio de 1914, presentaron una petición a la corte de distrito para obtener préstamos de dinero por medio de certificados de síndicos, y a tal efecto alegaron y suplicaron lo que sigue:

''1º. Que vuestros síndicos han hecho un cuidadoso y detenido examen del estado y condición de todas las plantaciones de la Central Vannina, asesorándose para ello del mayordomo de campo de dicha factoría; y tanto las de cañas propias como las de colonos, están

actualmente en un estado de completo abandono y con bien defini-
das señales de deterioro y futura merma en su rendimiento.

"2º. Que vuestros síndicos, tienen la absoluta convicción de que
si no se procede inmediatamente y sin pérdida alguna de tiempo al
acondicionamiento y cuidado de dichas plantaciones, la próxima
cosecha de 1915 será un completo fracaso, con manifiesta pérdida
de la casi totalidad de la cosecha que ahora se calcula.

"3º. Que dichas plantaciones de cañas constituyen el único activo
y garantía de los distintos acreedores de dicha corporación, inclu-
yendo principalmente sus acreedores refaccionistas y otros más o me-
nos privilegiados, con exclusión única de sus acreedores hipotecarios,
de tal modo que si se permite la completa ruina de aquéllas, por falta
de una oportuna e inmediata atención, vuestros síndicos no tendrían
medio alguno de satisfacer ni un ínfimo tanto por ciento de las obli-
gaciones pendientes contra dicha corporación, a la vez que sobreven-
dría una pronta ejecución de todos los bienes que a aquélla corres-
ponden.

"4º. Que a pesar de que como ya han manifestado, dichas plan-
taciones constituyen la única fuente de ingresos de dicha compañía,
vuestros síndicos se han visto en la inevitable necesidad en el momento
más crítico, de suspender todo trabajo de cultivo y acondicionamiento
de las mismas, por falta de efectivo para atender a dichos gastos;
habiéndose negado las distintas entidades de quienes vuestros síndicos
han solicitado préstamos para tal propósito, a verificarlos en otras
condiciones que no sea bajo la garantía de esta corte y por medio
de certificados de síndicos, por ella autorizados, con carácter de pre-
ferentes sobre las demás obligaciones pendientes de dicha factoría,
y para ser necesariamente reembolsados con el producto de los pri-
meros ingresos y frutos elaborados en la próxima zafra de 1915.

"5º. Que la suma indispensable de momento para tales atenciones
hasta que pueda determinarse mejor más adelante el total necesario,
es de doce mil dollars, para dedicarse exclusivamente a apremiantes
obligaciones y trabajos de cultivo.

"Por todo lo cual vuestros síndicos suplican a la Hon. Corte se
sirva dictar una orden autorizándoles, en las condiciones que estime
procedentes, a negociar un empréstito preliminar de doce mil dollars,
con intereses del 9 por ciento anual garantizados con certificados de
síndicos, que constituirán un gravamen preferente y especial sobre
los primeros ingresos de la corporación y los frutos que habrán de
elaborarse en la próxima cosecha de 1915; y que serán considerados
como crédito privilegiado a los efectos y para los fines que antes se
mencionan."

El 14 de julio de 1914 se celebró la vista de la petición de los síndicos, con asistencia de su abogado y del de la mercantil Sobrinos de Ezquiaga, dueña de un crédito refaccionario cuya preferencia quedaría afectada de declararse con lugar la solicitud de los síndicos. El acreedor refaccionario indicado se opuso y formuló su oposición por escrito en los siguientes términos:

"Que consignan su más formal oposición a la petición de los síndicos consignada en moción del día 13 del corriente, y encaminada a obtener en la corte autorización para levantar un empréstito preliminar de $12,000 con interés del 9 por ciento garantizados con certificados de síndicos, que constituirán un gravamen preferente y especial sobre los primeros ingresos de la corporación y los frutos que habrán de elaborarse en la próxima cosecha de 1915, basando vuestros peticionarios su oposición en las siguientes razones:

"*Primera.* Porque la expedición de certificados de síndicos que se solicita con carácter de gravamen preferente y especial sobre los frutos que se elaboren en la próxima zafra de 1915, contradice, se opone, y hace de todo punto ineficaz, la preferencia anteriormente reconocida al crédito de vuestros peticionarios, originado del contrato de refacción agrícola que fué objeto de la escritura de 25 de agosto de 1913 ante el Notario Don Julio César González: cuyo contrato es obligación de la actual sindicatura, en cuanto fué por esta última reconocido aceptado y cumplimentado parcialmente. Copia del mismo se une a continuación para que forme parte de la presente.

"*Segunda.* Porque la aludida preferencia que se interesa, para los dichos certificados de síndicos, es también opuesta y contradictoria a la que a los créditos de refacción agrícola anotados en el registro de contratos agrícolas, cual lo está el de vuestros peticionarios, reconoce la sección 4ª. de la Ley de 10 de marzo de 1910; y a la prelación que a créditos de dicha índole, atribuyen los artículos 1824 y 1825 del Código Civil tal como fueron reformados por la antes indicada Ley de 1910; y en tal sentido los certificados de síndicos que se expidan, con la preferencia interesada, en su condición de posteriores al de vuestros peticionarios, no podrán ser inscritos en el dicho registro de contratos agrícolas mientras esté vigente, como en la actualidad lo está, la anotación del crédito de vuestros peticionarios.

"*Tercera.* Porque la petición de los síndicos sobre expedición de certificados de síndicos, se limita a señalar como fin o destino de los fondos que levante con dichos certificados, el atender a *apremiantes*

*obligaciones y trabajos de cultivos* y tal vaguedad e indeterminación del destino que debe darse a los fondos levantados, es contraria a la jurisprudencia que rige en la materia, la que exige una detallada especificación de la suma necesitada y de los propósitos a que se destinan. 34 Cyc., 301. *Meyer* v. *Johnston,* 53 Ala., 237.

"*Cuatro.* Porque sólo en los casos de sindicatura de compañías de ferrocarriles, y en razón al carácter cuasi público de éstos, tienen las cortes autoridad y poder para expedir certificados de síndicos, que constituyan gravamen preferente a. cualquier otro anterior, sin que medie el consentimiento del primer acreedor; 34 Cyc., 298; y en el caso de autos no siendo la Central Vannina, una corporación de carácter cuasi público, la corte carece de jurisdicción y poder para autorizar la expedición de certificados preferentes, en la forma interesada por los síndicos.

"*Quinta.* Porque es doctrina igual mantenida por la jurisprudencia que en casos cual el que nos ocupa, el interés de la corporación y el de los acreedores preferentes se armoniza debidamente, expidiendo certificados sin perjuicio de los créditos preferentes constituídos en favor de personas que no prestan su consentimiento a tal expedición. *Rutherfor* v. *Pennsylvania Midland R. Co.,* 178 Pa., 38.

"Bajo los fundamentos expuestos, vuestros peticionarios dejan consignada su oposición a la expedición de los certificados de síndicos interesada, y

"Suplican a la corte se sirva desestimar la petición de los síndicos a que queda hecha referencia."

El 22 de julio de 1914, la corte de distrito resolvió la cuestión suscitada por medio de una orden que, copiada a la letra, dice así:

"Por cuanto, Rud Myohl y Abelardo de la Haba, síndicos judiciales nombrados por esta corte en el caso arriba indicado, han archivado en esta secretaría una moción que fué discutida en cámara el día 14 de los corrientes con asistencia y audiencia del acreedor refaccionario Sobrinos de Exquiaga, representado por su abogado Don Eduardo Acuña, solicitando autorización para obtener la suma de *doce mil dollars* ($12,000) mediante la expedición de *certificados de 'receivers,'* cuya suma es urgentemente necesaria para la conservación de las plantaciones, pago de cañas entregadas ya a la central y compensación del personal de campo y oficinas, necesario para el

desenvolvimiento de los negocios de dicha corporación, y a cuya solicitud se opuso dicho acreedor refaccionario, alegando que no se podía acordar el pago de ningún crédito con preferencia al suyo.

"POR CUANTO, de las manifestaciones de dichos síndicos, derivadas del examen que han hecho de las plantaciones, resulta que éstas se encuentran en un lamentable estado de abandono, debido ·a la carencia de recursos de la administración judicial para atenderlas y conservarlas en buen estado de cultivo.

"POR CUANTO, estas manifestaciones de los síndicos han sido en parte comprobadas por inspección personal del juez que suscribe esta orden, quien ha visto algunas de estas plantaciones y llegado al convencimiento de que si las cañas no son inmediatamente atendidas, no producirán beneficio alguno cuando se dé principio a la próxima zafra.

"POR CUANTO, existe en la actualidad un contrato de refacción otorgado por la Central Vannina a favor de Sobrinos de Ezquiaga, por una crecida suma de dinero como saldo de operaciones refaccionarias anteriores, cuyo crédito refaccionario tiene como única y exclusiva garantía el producto de dichas plantaciones de caña, y es de todo punto evidente, que si a estos cultivos no se les presta la debida y urgente atención, se perdería totalmente la cosecha y desaparecería por consiguiente la garantía de 'ese crédito con manifiesto perjuicio de dichos acreedores refaccionarios.

"POR CUANTO, de la relación detallada de los gastos que los síndicos han presentado a esta corte, aparece que la antes dicha suma de doce mil dollars, es la cantidad estrictamente indispensable en este momento para las atenciones urgentes especificadas en dicha relación presentada a la corte por los síndicos.

"POR CUANTO, dichos síndicos y aun el mismo juez de esta corte han verificado cuantas gestiones han sido necesarias para conseguir, por cualquier otro medio, del que aquí se adopta, los recursos suficientes para los fines indicados, siendo inútiles estos esfuerzos, porque tanto los bancos como los propios acreedores refaccionarios, han rehusado facilitar a esta administración judicial los recursos necesarios para cubrir estas perentorias atenciones.

"POR CUANTO, esta corte, en casos de esta índole, tiene facultades discrecionales bastantes para adoptar medidas extraordinarias convenientes y precisas para la protección y conservación de todas las propiedades sujetas a la administración judicial, a fin de que ésta resulte práctica y provechosa, no sólo para las partes litigantes,

sino para todas las personas cuyo interés en el éxito de esta administración, esté plenamente demostrado.

"Por cuanto la corte, al adoptar esta resolución, no tiene el propósito de perjudicar ni postergar el crédito que cualquier persona pueda tener en contra de la Central Vannina, ni mucho menos el del acreedor refaccionario, cuya preferencia no queremos desconocer, sino que, por el contrario, es la sana intención de la corte, atender debidamente al cultivo de las plantaciones de cañas que actualmente existe, las cuales se encuentran en estado ruinoso por falta de los recursos pecuniarios suficientes con que atender a su limpieza y cuidado, y cuyas plantaciones, convertidas más tarde en azúcar, constituyen la única fuente de recursos con que la central cuenta para hacer frente a sus grandes responsabilidades, que no consisten solo en el pago del crédito refaccionario.

"Por cuanto, la corte autoriza la expedición de certificados de síndicos judiciales hasta cubrir la cantidad de *doce mil dollars,* y ordena que tales certificados sean autorizados con la firma oficial de los Señores Rud Myohl y Abelardo de la Haba, como tales síndicos judiciales nombrados por esta corte, en número total de seis, y por valor de *dos mil dollars* cada uno de dichos certificados, con el carácter de *títulos al portador,* y cuyos certificados deberán ser pagados con preferencia a cualquier otro crédito, el día 31 de marzo de mil novecientos quince, o en cualquier otra fecha anterior en que los síndicos nombrados por esta corte tengan el dinero suficiente para su pago; y se ordena además que dicha suma de doce mil dollars, una vez obtenida por esta administración judicial, sea destinada al pago de las siguientes atenciones:

(*a*) Limpieza y desyerbo de mil cuerdas de cañas, más o menos, destinadas a la zafra de 1915, que calculado al precio de cuatro dollars, por unidad resulta un total de\_   $4, 000

(*b*) Compra de abono y su aplicación a plantaciones propias de la central_____   2, 700

(*c*) Anticipos a colonos cuyas cañas, por falta de recursos se encuentran en lamentable estado de abandono; *entendiéndose* que la cantidad que a cada uno se entregue no debe exceder de dos dollars cincuenta centavos por cuerda, hasta un total de mil doscientas cuerdas aproximadamente\_\_\_\_\_   3, 000

Al frente_____. ._____   $9, 700

Del frente_____ . _____     $9,700

(d) Pago de diferencias no satisfechas aún a los colonos
que a continuación se relacionan, por cañas entregadas a
la Central Vannina durante el período de la administra-
ción judicial:

| | |
|---|---:|
| Saturnino Fernández_____ | $93.00 |
| José Solís Amy_____ | 16.00 |
| José Fuentes Gómez_____ | 124.00 |
| Delfín Cátala_____ | 2.00 |
| Juan Elías Cruz_____ | 8.00 |
| Nicasio Sosa_____ | 18.00 |
| Cristino Bravo_____ | 6.00 |
| Domingo Fuentes García_____ | 7.00 |
| Juan Gotay _____ | 105.00 |
| Luciana Cruz_____ | 2.00 |
| Gregorio Santana _____ | 2.00 |
| Justina Morales de León_____ | 9.00 |
| Gonzalo Díaz _____ | 1.00 |
| Marcelino Salazar_____ | 20.00 |
| Ramón Acosta López_____ | 5.00 |
| Jacinto Alamo_____ | 1.00 |
| Teodoro Amador_____ | 14.00 |
| Concepción Marín_____ | 10.00 |
| Francisco Chiclana_____ | 8.00 |
| Hernáiz & Muriel_____ | 48.00 |

Total_____     500

(e) Pago de atenciones urgentísimas como son el del per
sonal de campo necesario para cultivos, inscripciones de
ciertos contratos de molienda que carecen de ese requi-
sito legal, y pago de peritos que se han utilizado y deben
utilizarse más tarde, para la tasación de cañas de colo-
nos que están en desacuerdo con la central_____     1,800

Total_____     $12,000

Y dos días después, el 24 de julio de 1914, la mercantil
Sobrinos de Ezquiaga acudió a esta Corte Suprema por medio
de la solicitud de *certiorari* a que nos hemos referido y pidió
a esta corte que revisara los procedimientos de la de dis-
trito de San Juan en el indicado caso de Abarca y anulara la
orden de 22 de julio de 1914, arriba transcrita:

"(A) Porque siendo la Central Vannina una corporación pri-

vada, sin carácter público ni cuasi público alguno, la corte ha excedido su jurisdicción, autorizando la expedición de certificados de síndicos para ser pagados en la próxima zafra de los primeros fondos que realicen los síndicos, con preferencia al crédito de la peticionaria, que, por su condición de refaccionario, tiene, en cuanto a los frutos de la finca refaccionada, y hasta su total pago, preferencia especial y determinadamente reconocida por la ley sobre todo crédito posterior de cualquier naturaleza que fuese.

"(B) Porque la corte ha excedido su jurisdicción, autorizando la expedición de dichos certificados, en la forma y con el alcance dichos, no obstante la oposición de la peticionaria y sin salvar en forma ni modo alguno su interés privilegiado. .

"(C) Porque la corte ha excedido igualmente su jurisdicción, al disponer que los fondos producidos por dichos certificados, de carácter especialmente privilegiado y preferente, se destinen en su mayor parte, e inviertan especialmente en compra de abonos, anticipos a colonos, y pago de diferencias adeudadas en la zafra anterior a colonos de la corporación, asignando con ellos a dichas atenciones una marcada y efectiva prelación sobre el crédito de la peticionaria, y no obstante ser el fundamento único y básico de la expedición, de tales certificados, la conservación y mantenimiento en cultivo de las plantaciones de caña.     .

"(D) Porque la orden de la corte es inconsistente con sus propios fundamentos en cuanto reconociendo la preferencia y prelación del crédito de la peticionaria; y consignando su propósito de no perjudicar ni postergar dicho crédito, lo posterga y perjudica de hecho, al atribuir a los certificados dicho carácter preferente, sobre cualquier otro crédito.

"(E) Porque el procedimiento tramitado en orden a dichos certificados, es nulo de acuerdo con el artículo 4 del Código Civil, en cuanto viola abiertamente los artículos 1824 y 1825 del mismo cuerpo legal y las secciones 4ª., 8ª. y 9ª. de la Ley sobre Contratos de Refacción Agrícola, de 10 de marzo de 1910."

Expuesto lo que antecede, procederemos al estudio y resolución de la cuestión debatida.

Son hechos plenamente demostrados que la Central Vannina es una corporación privada organizada bajo las leyes de Puerto Rico; que está en la actualidad bajo la administración de dos síndicos nombrados por una corte de justicia para continuar la explotación de su factoría azucarera y para

conservar su propiedad en buena condición de modo que sea segura y beneficiosamente usada; que los síndicos nombrados alegando el mal estado de las cañas de la central y de sus colonos, la carencia de metálico y la pérdida del cosecho si las siembras no se atendían debidamente a tiempo, pidieron a la corte que los autorizara a expedir certificados de síndicos por valor de doce mil pesos, que era la suma que de momento necesitaban, para ser cobrados con preferencia a cualquier otro crédito sobre los primeros ingresos de la corporación y los frutos que habrán de elaborarse en la próxima cosecha de 1915; que la petición fué tramitada con la intervención del único acreedor preferente cuyo crédito quedaría postergado de accederse a lo solicitado por los síndicos, y que no obstante la oposición de dicho acreedor privilegiado, la corte de distrito ordenó que los certificados se expidieran.

Una de las cláusulas del contrato celebrado entre el acreedor que se opuso a la petición de los Síndicos y la Central Vannina, cuyo contrato aparece debidamente inscrito en el Registro de Contratos Agrícolas del Registro de la Propiedad de San Juan, desde el 1 de octubre de 1913, dice así:

"*Primera.* La Corporación Central Vannina representada por su Presidente Don Antonio Caubet y Pons, con la autorización del board de directores en concepto de dueña y arrendataria de las fincas descritas, afecta y grava los productos o frutos de las mismas que se obtengan de las cañas de cultivo y también de las que le correspondan en virtud de los contratos celebrados con los colonos, a favor de los Señores Sobrinos de Esquiaga, para responder con tales productos al pago del crédito de refacción agrícola por la suma de doscientos mil dollars que expresa el contrato inserto."

Y las leyes al amparo de las cuales se celebró dicho contrato y que están vigentes en la actualidad, son:

La sección 4 de la ley No. 37 de 1910, sobre contratos de refacción agrícola y molienda de cañas y para otros fines, que es como sigue:

"Sección 4.—El crédito de refacción agrícola, desde la fecha de su presentación en el registro que más adelante se establece, tendrá

preferencia a los créditos posteriores de cualquiera otra naturaleza, excepción hecha de los créditos por contribuciones a favor de El Pueblo de Puerto Rico, según lo dispuesto en la ley, en cuanto a los frutos de la finca refaccionada, durante los años comprendidos en el contrato y siempre hasta que el acreedor sea completamente satisfecho del total importe de su crédito.

"En el caso de que el acreedor no hubiese sido íntegramente satisfecho del crédito, durante el plazo del contrato, deberá concertar con el deudor el oportuno documento de prórroga, o promover la demanda a que atañe la sección 9, dentro de los seis meses subsiguientes al vencimiento del contrato."

Y los artículos 1824 y 1825 del Código Civil revisado que, tales como quedaron enmendados en 1910, Leyes de 1910, páginas 126 y 127, disponen:

"Artículo 1824.—Con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:

"1. Los créditos a favor de El Pueblo de Puerto Rico, o de la correspondiente municipalidad, sobre los bienes de los contribuyentes, por el importe de las tres últimas anualidades, y la corriente no pagada, de las contribuciones que graviten sobre ellos.

"2. Los créditos por refacción agrícola, en cuanto a los frutos de las fincas objeto de la refacción, según lo determinado en la ley especial sobre esta materia.

"3. Los créditos de los aseguradores, sobre los bienes asegurados, por los premios del seguro de dos años, y si fuere el seguro mutuo, por los dos últimos dividendos que se hubiesen repartido.

"4. Los créditos hipotecarios y los refaccionarios, anotados e inscritos en el registro de la propiedad, sobre los bienes hipotecados o que hubiesen sido objeto de la refacción.

"5. Los créditos preventivamente anotados en el registro de la propiedad en virtud de mandamiento judicial, por embargos, secuestros o ejecución de sentencias, sobre los bienes anotados, y sólo en cuanto a créditos posteriores.

"6. Los refaccionarios no anotados ni inscritos, sobre los inmuebles a que la refacción se refiera, y sólo respecto a otros créditos distintos de los expresados en los cuatro números anteriores."

"Artículo 1825.—Con relación a los demás bienes muebles e inmuebles del deudor, gozan de preferencia:

"1. Los créditos a favor de El Pueblo de Puerto Rico y a la correspondiente municipalidad, por las contribuciones de las tres

últimas anualidades vencidas, y la corriente no pagada, no compren-
dida en el párrafo número 1 de la sección 1824.

"2. Los créditos por refacción agrícola, en cuanto a los frutos
de las fincas objeto de la refacción, según lo determinado en la ley
especial sobre esta materia.

"3. Los devengados:

"*a.* Por gastos de justicia y de administración del concurso en
interés común de los acreedores, hechos con la debida autorización
o aprobación.

"*b.* Por los funerales del deudor, según el uso del lugar, y tam-
bién los de su mujer y los de sus hijos constituídos bajo su patria
potestad, si no tuviesen bienes propios.

"*c.* Por gastos de la última enfermedad de las mismas personas,
causados en el último año, contando hasta el día del fallecimiento.

"*d.* Por jornales y salarios de dependientes y criados domésticos,
correspondientes al último año.

"*e.* Por anticipaciones hechas al deudor, para sí y su familia
constituída bajo su autoridad, en comestibles, vestido o calzado, en
el mismo período de tiempo.

"*f.* Por pensiones alimenticias durante el juicio de concurso, a
no ser que se funde en un título de mera liberalidad.

"4. Los créditos que sin privilegio especial consten:

"*a.* En escritura pública.

"*b.* Por sentencia firme, si hubiesen sido objeto de litigio.

"Estos créditos tendrán preferencia entre sí por el orden de anti-
güedad de las fechas de las escrituras y de las sentencias.''

La cuestión a resolver queda, pues, planteada en los si-
guientes términos:

¿Puede una corte alterar las condiciones de un contrato
celebrado voluntaria y válidamente al amparo de las leyes?
¿Lleva consigo la facultad que tienen las cortes para nom-
brar síndicos en ciertos y determinados casos, la de tomar
absoluto control sobre la propiedad de que se dé posesión
a los síndicos de tal manera que pueda variar el orden en
que dicha propiedad había sido anteriormente gravada por
sus dueños?

Hemos estudiado cuidadosamente la ley y nada dispone
sobre el particular. Hemos estudiado de igual modo la juris-

prudencia y no encontramos que se haya ejercitado tal poder en casos iguales al que está sometido a nuestra decisión.

¿Qué garantía puede ofrecer a los ciudadanos de un país una ley que clara y terminantemente asegura el pago de un crédito en un orden determinado, si un juez puede después discrecionalmente alterar el contrato de tal modo que haga completamente ilusoria la seguridad pactada?

Reconocer tal poder en la judicatura en ausencia de una disposición legislativa previa y clara, sería ir en contra de los principios fundamentales que informan nuestro sistema de gobierno.

Cuando surge una situación difícil en los negocios de una corporación, cuando los en ella interesados tienen confianza en que aquella situación es transitoria y podría salvarse con un esfuerzo supremo, los mismos interesados generalmente por su propia voluntad postergan sus derechos en la esperanza de verlos reconocidos en toda su plenitud en el futuro. De ahí que se registren muchos casos en los cuales se ha recurrido al medio de la expedición de certificados de síndicos preferentes autorizada por el poder judicial, a fin de obtener ciertas sumas de dinero especialmente garantidas que permitan hacer frente al conflicto. Pero no se ha recurrido, ni se comprende que se recurra, a tal medio, cuando los mismos interesados se oponen.

En el presente caso el único acreedor cuyo crédito preferente quedaría postergado, se ha opuesto a la solicitud de los síndicos. Tanto éstos en su petición como la corte en su orden se refieren al hecho de que la medida solicitada y adoptada tiende a proteger especialmente al acreedor refaccionario. Sin embargo, el acreedor refaccionario se ha opuesto expresamente a que se le proteja de tal modo, y nos parece que él está en mejores condiciones que nadie para solicitar o adoptar las medidas protectoras de sus propios intereses.

En el curso de su argumentación en el acto de la vista ante esta Corte Suprema, el representante legal del acreedor refaccionario manifestó que según el contrato tenía derecho

a cobrar su crédito percibiendo tres pesos por cada saco de azúcar fabricado por la central y que había llegado a ofrecer a los síndicos que estaba dispuesto a disminuir su garantía limitándola a percibir en vez de tres un peso por cada saco de azúcar, y que su ofrecimiento no había sido aceptado por los síndicos. La aspiración de los síndicos, era, pues, la de postergar en absoluto el crédito preferente del acreedor refaccionario y al convertir la corte de distrito dicha aspiración en realidad por su orden de 22 de julio último, contra la expresa voluntad del acreedor, se extralimitó en sus poderes y realizó en tal virtud un acto enteramente nulo.

La jurisprudencia americana es abundante sobre la materia, y por ella se ha establecido una distinción bien marcada entre los poderes de una corte cuando interviene en la administración de una corporación cuasi pública y cuando dirige, por medio de síndico, los negocios de una corporación privada.

En el caso de *Hooper* v. *Central Trust Co. of New York,* 29 L. R. A., 262, 263, la Corte de Apelaciones de Maryland, llegó a la siguiente conclusión:

"Los gravámenes adquiridos sobre la propiedad de individuos o de corporaciones privadas, no pueden postergarse por medio de certificados de síndicos."

En el caso de *Merriam* v. *Victory Min. Co. et al.,* 60 Pac., 997, la Corte Suprema de Oregon resolvió lo que sigue:

"El derecho de una corte que nombra un síndico a una corporación para dar prioridad al pago de deudas no aseguradas, sobre el gravamen de bonos garantizados con primera hipoteca, está restringido a los acreedores de ferrocarriles, que son negocios de interés público, y no puede ejercitarse para dar tal preferencia a acreedores no asegurados de una corporación ordinaria sobre gravámenes constituídos por contratos."

En el caso de *Farmer's Loan & Trust Co.* v. *Grape Creek Coal Co.,* 50 Fed., 481, 483, se presentó a la Corte de Circuito, S. D. Illinois, una petición para que la corte autorizara la

expedición de certificados de síndicos que constituyeran un gravamen preferente sobre la propiedad de cierta corporación. La petición se hizo por el síndico de la corporación, debiendo los certificados que se expidieran no exceder de $24,000, y destinándose su importe al pago de $3,428.64 para contribuciones, $6,400 para cancelar otros certificados y el resto para continuar la explotación de las minas de la corporación. El 75 por ciento de los tenedores de bonos se unió a la solicitud del síndico y el 25 por ciento restante se opuso. La corte de circuito consideró ampliamente la petición, citó la jurisprudencia aplicable y negó la autorización solicitada en los siguientes términos:

"Amplias como son las facultades de una corte de equidad, no autorizan al canciller para alterar la fuerza de obligaciones solemnes y destruir derechos adquiridos. En vez de postergar hipotecas y otros gravámenes existentes sobre la propiedad de una corporación privada y de personas naturales, es el deber de la corte protegerlos y hacerlos efectivos contra todas las cargas subsiguientes. Sería dañoso extender a todas las hipotecas, el poder que recientemente se ha ejercido sobre las hipotecas constituídas sobre ferrocarriles (algunas veces con libertad desmedida), habiendo en consideración su naturaleza peculiar. Este poder no existe, y la solicitud es denegada."

En ese mismo caso, al referirse al hecho de que cuando se trata de corporaciones ferroviarias se ha autorizado la expedición de certificados de síndicos preferentes, el Juez Gresham, se expresa, como sigue:

"En el ejercicio de esta jurisdicción excepcional y extraordinaria que es de origen relativamente reciente, las cortes han dictado órdenes declarando a los certificados de síndicos primeros gravámenes sobre la propiedad hipotecada. Sin embargo, ésto se ha hecho por razones que no son aplicables a hipotecas constituídas por corporaciones privadas. Una corporación de ferrocarriles es una institución cuasi pública que tiene el deber de explotar su vía como una vía pública. Si la compañía se encuentra en dificultades económicas e imposibilitada de cumplir con su deber, las cortes durante la pendencia de procedimientos para la venta del ferrocarril lo explotarán

por medio de un síndico y declararán los gastos relacionados con dicha explotación un gravámen preferente. Esto se hace por razón del carácter especial de la propiedad. Generalmente está hipotecada para garantizar bonos y las personas que hacen inversiones en tales garantías saben que la hipoteca grava una propiedad que ya está afecta a un deber público. Las corporaciones privadas no tienen ningún deber para con el público y el que continúe su explotación no es un asunto de interés público. Solamente cuando se trate de hipotecas de ferrocarriles es que la Corte Suprema de los Estados Unidos ha declarado válidas las órdenes que dan preferencia a los certificados de síndicos representativos de préstamos especiales y como ya hemos dicho solo por principios que no tienen aplicación a una hipoteca constituída por una corporación privada que no tiene ningún deber contraído para con el público. *Fosdick v. Schall,* 99 U. S., 235; *Barton* v. *Barbour,* 104 U. S., 126; *Miltenberger* v. *Railroad Co.,* 106 U. S., 286, 1 Sup. Ct. Rep., 140; *Union Trust Co.* v. *Railroad Co.,* 117 U. S., 434, 6 Sup. Ct. Rep., 809; *Wood* v. *Trust Co.,* 128 U. S., 421, 9 Sup. Ct. Rep., 131; *Kneeland* v. *Trust Co.,* 136 U. S., 89, 10 Sup. Ct. Rep., 950; *Morgan's, etc., Co.* v. *Texas Central Ry. Co.,* 137 U. S., 171, 11 Sup. Ct. Rep., 61.''

En el caso de *Rutherford* v. *Pennsylvania Midland R. Co. et al.,* 35 Atl. Rep., 926, no obstante tratarse de un ferrocarril y de haberse solicitado la expedición de los certificados de síndicos por los tenedores de 491 bonos, siendo la emisión total de bonos de 510, y de haberse dictado la orden ''sin perjuicio de los derechos de los tenedores de bonos que no han consentido y con permiso para que después pidan que sus bonos lo mismo que los de los tenedores que han consentido, estén sujetos al gravamen preferente de los certificados de síndicos,'' la Corte Suprema de Pennsylvania, al revisar los procedimientos dijo:

''Nuestra primera impresión fué que el ilustrado juez fué demasiado legos al autorizar la emisión de los certificados del síndico para completar el ferrocarril no terminado; que el hacerlo así hubiera establecido un precedente peligroso, etc. Ordinariamente esto sería indudablemente así y no dudaríamos en expresar nuestra desaprobación a tales procedimientos, pero al considerar más detenidamente los hechos y circunstancias especiales y peculiares de este caso, no

estamos dispuestos a decir que él claramente cometió error y que los procedimientos debieran ser revocados. Nos inclinamos más a creer que el declarar con lugar las pretensiones de los apelantes sería perjudicial a todas las partes interesadas. En cuestiones que descansan tanto en la sana discreción de la corte sentenciadora como son los casos de esta naturaleza, nosotros no intervendremos al menos que apareciera que se ha cometido un abuso manifiesto de esa discreción.''

También la Corte Suprema de los Estados Unidos, aun tratándose de una compañía de ferrocarriles, procede con cautela y examina cuidadosamente el hecho de si las partes interesadas consintieron expresa o tácitamente la orden por virtud de la cual se autorizó la expedición de los certificados. Nos referimos al caso de *Wallace* v. *Loomis,* 97 U. S., 162, en el que la corte dijo:

''Los síndicos fueron autorizados por la orden nombrándolos, entre otras cosas, para reparar y explotar el ferrocarril y adquirir el material rodante necesario; y para estos fines, para obtener dinero a préstamo por la suma indicada en la orden y expedir los certificados de débito para ello; y la orden declaraba que tal préstamo habría de constituir un gravamen sobre la propiedad pagadero con preferencia a los primeros bonos hipotecarios. Es indiscutible hoy día el poder de una corte de equidad para nombrar síndicos administradores de una propiedad como un ferrocarril, cuando la corte se hace cargo de ella como si se tratase de un fondo en depósito para el pago de gravámenes, y autorizar a tales síndicos para obtener el dinero necesario para la conservación y administración de la propiedad, y constituir gravamen sobre la misma para el pago de dicho préstamo, Tales actos constituyen parte de la jurisdicción que siempre ha ejercido la corte en virtud de la cual tiene el deber de proteger y conservar los fondos que en concepto de depósito se le confíen. Es indudable que tal poder debe ejercitarse con gran cautela y si fuese posible con el consentimiento y adquiescencia de las partes interesadas en los fondos. En el caso presente al parecer las partes mayormente interesadas consintieron expresamente dicha orden o no ofrecieron objeción alguna contra ella. El apelante alega que fué dictada sin notificación a los tenedores de segundos bonos hipotecarios. Pero

propiamente hablando no puede alegarse ésto por razón de que los depositarios de la segunda hipoteca fueron partes en el pleito y fueron notificados de la solicitud y no se opusieron a que fuera concedida. Los tenedores de boŋos estuvieron representados por sus depositarios y hay que estimar que quedan obligados por sus actos por lo menos en cuanto se refiere al poder de la corte para actuar y dictar la orden y en cuanto los intereses de terceros que hayan actuado fundados en la misma puedan ser afectados. El apelante no pidió que se le hiciera parte en el pleito hasta varios meses después de haberse dictado la orden y cuando se hizo parte y presentó su contestación y contrademanda pidió a la corte que continuara poseyendo la propiedad por medio de sus síndicos y que continuara dirigiéndolos y gobernándolos en la administración de la misma, sin indicar la más mínima objeción a los términos en que estaba concebida la orden, por la cual los síndicos existentes habían sido nombrados.''

Y, por último, la misma Corte Suprema de los Estados Unidos, dándose cuenta exacta de que la doctrina aplicada en casos de ferrocarriles se iba extendiendo demasiado y de que las cortes estaban ejercitando poderes que en realidad de verdad no tenían, por medio del Juez Brewer, en el caso de *Kneeland* v. *American Loan Co.,* 136 U. S., 89, 97, se expresó así:

''A estos hechos tenemos que decir en primer lugar que el nombramiento de un síndico no inviste a la corte de un poder absoluto sobre la propiedad, ni de una autoridad general para desnaturalizar gravámenes adquiridos por contrato. Por haber declarado esta corte en casos marcados y limitados que deudas no garantizadas tenían un derecho de prelación sobre deudas hipotecarias, parece haber nacido la idea que la corte que nombra un síndico adquiere el poder de dar preferencia a cualquier deuda de carácter general y no asegurada. Parece que se ha supuesto que una corte al nombrar un síndico puede legalmente gravar la propiedad hipotecada con el pago de cualquier deuda no garantizada. Es más, hemos sabido que algunas cortes han nombrado un síndico con la condición de que se pagasen todas las deudas no garantizadas con preferencia a los gravámenes hipotecarios que se trataban de cobrar. ¿Puede concebirse algo que de una manera más radical destruya la santidad de las obligaciones con-

tractuales? El tenedor de una deuda hipotecaria sobre un ferrocarril tiene el mismo derecho a exigir y esperar de la corte que se respete la preferencia adquirida y contratada, que el tenedor de una hipoteca sobre una finca o solar. Así pues cuando una corte nombra un síndico para un ferrocarril no tiene el derecho de imponer a esa sindicatura la condición de que se paguen deudas no garantizadas excepto aquellas pocas que de acuerdo con la jurisprudencia de está corte se ha declarado que tienen por equidad preferencia. Nadie está obligado a vender a una compañía de ferrocarriles ni a trabajar para ella y todo el que ha negociado con una compañía cuya propiedad está hipotecada es de presumirse que lo ha hecho por la fé que tenía en su responsabilidad personal y no en la experanza de posponer posteriormente la preferencia de los gravámenes hipotecarios. Constituye la excepción y no la regla el que la prioridad de esos gravámenes pueda ser pospuesta. Hacemos énfasis en la santidad de los gravámenes contractuales porque parece existir la creencia creciente de que el juez en el ejercicio de sus facultades en equidad, tiene un poder discrecional sin límites para posponer gravámenes adquiridos.''

Por virtud de todo lo expuesto, procede que este Tribunal Supremo en el ejercicio de la jurisdicción que le confiere la ''Ley para autorizar autos de *certiorari*'' aprobada el 10 de marzo de 1904, Leyes de 1904, p. 173, anule la orden dictada el 22 de julio de 1914 por la Corte de Distrito de San Juan, Sección 1ª., en el caso No. 7376, *Sucesores de Abarca, S. en C.,* v. *Central Vannina,* sobre cobro de dinero y nombramiento de síndico, autorizando la expedición de certificados de síndicos para ser cobrados con preferencia a créditos anteriormente asegurados.

*Concedida la solicitud y anulada la orden de*
*la corte inferior de 22 de julio de 1914.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf, Aldrey y Hutchison.